680 P.2d 343

**Jerry R. BROOKS and Ruth N. Brooks, his wife, Plaintiffs-Appellants,**

**v.**

**Lewis Ray TANNER, Jr., Personal Representative of the Estate of Lewis R. Tanner, Sr., Deceased, and All Unknown Claimants of Interest in the Premises Adverse to the Plaintiffs, Defendants-Appellees.**

**No. 14933.**

Supreme Court of New Mexico.

April 13, 1984.

right to use a roadway easement across the Brooks' property.

The issues are whether the provisions of a real estate contract created an express easement for road purposes, or whether a roadway easement was created by prescription or by necessity.

Reference to the following sketch which appears in the record as Plaintiffs' Exhibit 8 will enhance understanding of the facts and issues presented herein.

Modrall, Sperling, Roehl, Harris & Sisk, John R. Cooney, Albuquerque, for plaintiffs-appellants.

Edward G. Parham, and McCulloch, Grisham & Lawless, Thomas L. Grisham, Albuquerque, for defendants-appellees.

## OPINION

SOSA, Senior Justice.

Plaintiffs Jerry and Ruth Brooks appeal from a district court judgment granting Fermin and Cecilia Herrera (Herreras) the

Lewis R. Tanner, Sr. (Seller) was the owner of six lots in the Monticello Subdivision of Tijeras Canyon, east of Albuquerque. In 1953, Seller conveyed two lots (numbered 138 and 139) to Hazel Calverley together with a twelve-foot easement over lot 14 and a portion of lot 140. This easement provided access from the property sold to Monticello Drive, a major thoroughfare of the subdivision. This property is now owned and occupied by Dale Sonnenberg.

A real estate contract was entered into between the Brooks (Buyers) and Seller on April 4, 1969. The contract provided for sale of lots 14 and 15 as well as the westerly forty feet of lots 140 and 141. Seller

retained the easterly portions of the latter two lots and reserved a twelve-foot easement across the land sold which provided access from the retained property to Monticello Drive.

In 1972, Seller attempted to convey the right to use an easement across lots 14 and 140 to Marie Oliver (Oliver) by an instrument entitled "Deed of Right-of-Way and Easement." The easement was to be used for access to Monticello Drive. Oliver's property, a tract of approximately twelve acres, was located immediately to the east of the subdivision lots in question.

In December, 1972, Herreras became owners of the Oliver tract. Regular access to their property at that time was via an "old road" which ran directly south from the property through two other tracts and intersected with a public highway. In March, 1980, Herreras graded a new access road to their property as successors-in-interest to the purported easement granted Oliver by Seller in 1972. The newly constructed portions of the road ran across the Herrera tract and along the southerly border of Seller's retained property. This new road connected with the existing road across Buyer's property which provided access to the Calverley and Tanner (Seller) lots. A direct route for motor vehicles was thus provided from the Herrera tract over Seller's and Buyers' properties to Monticello Drive. Prior to the improvements, this route had been unsuitable for regular vehicular access to the Herrera tract.

Traffic on the road over Buyers' property increased substantially as a result of use in connection with the Herrera tract, which by this time contained a number of mobile homes. Buyers then sought to preliminarily enjoin Herreras from continuing trespass on grounds that the grant of the easement from Seller to Herreras' predecessor-in-title, Oliver, was without legal effect. The district court denied the injunction. Suit was then brought seeking a permanent injunction barring Herreras from use of the roadway easement. After trial on the merits, the district court found that Seller had expressly reserved an easement

for road purposes in the contract, that Seller properly conveyed the easement to Oliver, and Herreras, as successors-in-title to Oliver, were entitled to use the roadway easement. The court also found that Herreras had acquired the roadway easement by prescription as well as by necessity.

**Express Easement**

The first issue we address is whether Seller expressly reserved an appurtenant easement or an easement in gross by express provisions of the contract.

Determination of this issue calls for a precise construction of the relevant contractural provisions.

> If it appears from such a construction of the grant or reservation that the parties intended to create a right in the nature of an easement in the property retained for the benefit of the property granted, or to reserve such a right in the property granted for the benefit of the property retained, as the case may be, such right will be deemed an easement appurtenant, and not in gross, regardless of the form in which such intention is expressed. On the other hand, if it appears from such a construction that the parties intended to create a right to be attached to the person to whom it was granted or by whom it was reserved, it will be deemed to be an easement in gross.

28 C.J.S. *Easements* § 4 (1941)(footnotes omitted).

The evidence bearing on the issue is substantially all documentary, being comprised of the contract and the various instruments referred to therein. This Court is therefore as well positioned as the district court to consider the evidence and determine the extent of the easement. *Garry v. Atchison, Topeka and Santa Fe Railway Co.,* 71 N.M. 370, 378 P.2d 609 (1963). We are not bound by findings of the trial court as to the extent or nature of the contested easement. *See Id.*

Since the challenged easement is set forth in the 1969 real estate contract, the instrument as a whole must be considered. *See Shaeffer v. Kelton,* 95 N.M. 182, 619

P.2d 1226 (1980). The contract first described the land to be sold. Existing easements for utility and septic lines were then set forth. The contract then specifically made the sale of land to Buyers

> SUBJECT TO restrictions, reservations and easements of record and easements as shown upon the plat of the above described property prepared by Ronald E. Tyree, Registered Professional Land Surveyor No. 3516, in accordance with survey made March 29, 1969, a copy of which plat is hereto attached, marked Exhibit "A" and made a part hereof; and to taxes for the year 1969 and subsequent years, and
>
> SUBJECT also to a road easement granted to Hazel Calverley along and over the Southerly twelve (12') feet of the above described property, recorded in Book D–598, page 80, Records of Bernalillo County, New Mexico; and Owner hereby reserves an easement for road purposes over the Southerly twelve (12') feet of the above described property for use in connection with that portion of Lots 140 and 141 of Monticello and not included in this sale and for ingress and egress from his property to Monticello Drive, which easement shall be left open. * * *

The survey plat referred to in the first-quoted paragraph delineates the various utility and septic easements as well as a twelve-foot "Road Easement by Deed" along the southerly border of the land. This was an obvious reference to the easement Seller granted Hazel Calverley as part of the 1953 sale previously noted. This easement was to provide access to Monticello Drive. The description of the Calverley easement in the survey plat and in the contract did not create a separate easement in favor of Seller. Neither did these descriptions give Seller an interest in this easement which he had the power to convey. Rather, the record indicates that this easement was solely for the benefit of the property conveyed to Calverley.

The reservation to Seller in the second-quoted paragraph, by its precise terms, indicates it is to be used in connection with that portion of the lots not included in the sale and is for "ingress and egress from his property to Monticello Drive." Emphasizing this latter clause, Herreras maintain that its language either expanded the easement reserved in the prior clause, or created an additional easement resulting in an easement in gross for general road purposes in favor of Seller.

■ In construing the terms of the contract, each part of the contract is to be accorded significance according to its place in the contract so as to ascertain and give effect to the intentions of the parties. *Schultz & Lindsay Construction Co. v. State*, 83 N.M. 534, 494 P.2d 612 (1972). Herreras' asserted construction would render meaningless the contractual phrase which provided that the easement was to be used "in connection with that portion of Lots 140 and 141 of Monticello" not included in the sale. We will not adopt such a construction. *See Id.* Had the parties intended an easement in gross, no such limitation would have been necessary since Seller could have used such an easement for any purpose.

The terms of the reservation indicate that the easement was to be used in connection with Seller's property. At the time the contract was executed, Seller owned no other property in the vicinity other than the portions of the two lots he retained. Seller did not at that time, nor did he ever, possess any interest in the Oliver tract which was eventually deeded to Herreras. The easement was clearly appurtenant and not in gross, with Seller's retained property as the dominant estate and the property sold to Buyers as the servient estate. Our determination is buttressed by the strong constructional preference for appurtenant easements over easements in gross. 3 R. Powell, The Law of Real Property ¶ 405 at 34–20; (1981); 28 C.J.S., *supra*, § 4.

■ The contract language did not, as some of Herreras' arguments imply, operate as an exception whereby Seller retained title to the twelve-foot easement which he could thereafter freely convey. The contractual language we have reviewed re-

served only an easement for ingress and egress. Such a clearly expressed, limited reservation cannot be construed as an exception of a fee interest. *See Kennedy v. Bond,* 80 N.M. 734, 460 P.2d 809 (1969).

■ Lastly, our opinion in *Martinez v. Martinez,* 93 N.M. 673, 604 P.2d 366 (1979), does not, as Herreras maintain, compel consideration of extrinsic evidence to ferret out the intentions of the parties. *Martinez* involved the rather exceptional situation of a non-specific grant creating an easement. There, extrinsic evidence was necessary to determine the location and extent of the disputed easement and thus to give effect to the intentions of the parties. Here, we are presented with a specific, straightforward reservation of an easement. We find the intentions of the parties to be clear from the language utilized in the contract. The terms of the easement reservation to Seller are specific and unambiguous. There is no need for reference to extrinsic evidence; the terms of the reservation are decisive of the limits of the easement. *See Dyer v. Compere,* 41 N.M. 716, 73 P.2d 1356 (1937).

■ In sum, neither the reservation to Seller, nor the Calverley easement, as each is set forth in the contract, gave Seller the right to use Buyers' property for access from the Herrera tract to Monticello Drive. Furthermore, no permission was obtained from Buyers for use of their property in this manner. The burden on Buyers' property, as the servient estate, cannot be increased without their consent. *Posey v. Dove,* 57 N.M. 200, 257 P.2d 541 (1953). The record indicates that Buyers have clearly objected to the increased use of their property in connection with access to the Herrera tract.

■ We hold that the easement reserved by Seller was an appurtenant easement. Seller had no power to convey or expand the use of that easement for use in connection with the Oliver tract which Herreras purchased.

**Prescriptive Easement**

■ Buyers also challenge the district court's determination that a roadway easement over their property for access to the Herrera tract was acquired by prescription. Proof of an easement by prescription requires a showing by clear and convincing evidence of open, uninterrupted, peaceable, adverse, and notorious use for a ten-year period under a claim of right, with the knowledge or imputed knowledge of the property owner. *Garmond v. Kinney,* 91 N.M. 646, 579 P.2d 178 (1978); *Hester v. Sawyers,* 41 N.M. 497, 71 P.2d 646 (1937).

Contrary to the district court's determination, we find that these requirements were not met. The record indicates that several persons used the road across Buyers' property with Buyers' knowledge. The road, however, was used almost exclusively for access to the Tanner (Seller) and Calverley properties. Such use was perfectly consistent with the limited easements for such access set forth in the real estate contract and cannot serve as a basis for an easement by prescription.

■ Herreras' assertions that Seller used the easement as a public road are also groundless. There is simply no evidence that Seller used the easement for access to any property other than his own. Even if evidence of public use were present, such use would be inconsistent with the assertion of a prescriptive right. *Garmond v. Kinney,* 91 N.M. at 647, 579 P.2d at 179.

■ The only evidence which could conceivably serve as a basis for a prescriptive easement across Buyers' property was Mr. Herrera's use of the road approximately three times per year for access to his property. However, the record reflects that the maximum period of Mr. Herrera's use was at least two years short of the ten years required to establish a prescriptive easement. In addition, the use by Mr. Herrera was quite sporadic and not of a nature which would impart notice to Buyers that Herreras claimed a prescriptive right to use the road. We find the evidence is

insufficient as a matter of law to establish a prescriptive easement.

### Easement by Necessity

 The district court's determination that a way of necessity existed over Buyers' property to Herreras' tract was also incorrect as a matter of law. "A way of necessity can only arise where an owner of property severs a portion of his property and the portion retained or sold is cut off from access to a public route by the land from which it was severed." *Amoco Production Co. v. Sims*, 97 N.M. 324, 326, 639 P.2d 1178, 1180 (1981). The fundamental requirement of common ownership, *Id.; Otero v. Pacheco*, 94 N.M. 524, 612 P.2d 1335 (Ct.App.), *cert. denied*, 94 N.M. 674, 615 P.2d 991 (1980), is lacking in the instant case. There is no proof that Seller ever owned the Herrera tract in addition to the lots he owned in the Monticello Subdivision, or that he conveyed or retained portions thereof in a manner which would landlock the Herrera tract.

### Conclusion

No easement of any kind exists over Buyers' property for access to the Herrera tract. The district court therefore erred in refusing to enjoin Herreras from use of the contested easement. The owners of the Herrera property and their successors and assigns should be permanently enjoined from use of the claimed easement across Buyers' property. *See Kennedy v. Bond*, 80 N.M. 734, 460 P.2d 809 (1969).

We note that Buyers also sued Seller's estate and Lewis R. Tanner, Jr. as its executor, essentially claiming that any valid easement grant by Seller to Oliver in 1972 was a breach of the 1969 real estate contract. In light of our conclusion that Buyers' property is not burdened by an easement in favor of Herreras, Buyers' action for breach is no longer well founded. Such a claim would lie only had Seller's actions resulted in the creation of an additional valid easement across Buyers' property not set forth in the contract.

The district court is reversed and the cause remanded for further proceedings consistent with this opinion.

The parties are to bear their own costs and attorney fees on appeal.

IT IS SO ORDERED.

FEDERICI, C.J., and WALTERS, J., concur.