878 P.2d 348

Michael **HURLOCKER,**
Plaintiff–Appellant,

v.

Alfred R. **MEDINA** and Theresa D. Medina, Defendants–Appellees.

No. 14890.

Court of Appeals of New Mexico.

June 23, 1994.

MaryLiz A. Geffert, Sutin, Thayer & Browne, P.C., Santa Fe, for plaintiff-appellant.

Joseph L. Werntz, Steven J. Hile, Moses, Dunn, Farmer & Tuthill, P.C., Albuquerque, for defendants-appellees.

## OPINION

BLACK, Judge.

■ This case involves two contiguous parcels of property, "lot 13" and "the 2.2–acre parcel." They were divided in 1957 but were in common ownership between 1963 and 1984. A conveyance in 1984 left the 2.2–acre parcel without access. Plaintiff acquired the 2.2–acre parcel in 1992 and brought suit seeking to impose an easement by necessity on lot 13, which is owned by Defendants. Plaintiff moved for summary judgment, and Defendants cross-moved for summary judgment. The district court granted Defendant's summary judgment motion on the ground that the parcels had been divided and treated as separate lots and, therefore, the unity of title required to support an easement by necessity was lacking. We hold that New Mexico does not require the dominant and servient estates be created out of one undivided parcel, and, since the creation of an easement by necessity depends upon the intent of the parties, we remand.

### I. FACTS

Stamm Development Company (SDC) acquired a large tract of land from the New Mexico State Prison Board in the early 1950s. In 1957 SDC created the Casa Solana subdivision out of that tract. SDC conveyed all the subdivision lots to Allen Stamm and Associates (ASA) and retained the 2.2–acre parcel. Stamm, president of both SDC and ASA, filed an affidavit indicating that, at the time the subdivision lots were conveyed to ASA, the 2.2–acre parcel had alternate access to a public road.

In 1963 ASA sold lot 13 to Merritt and Mary Barton, and, at the same time, SDC conveyed the 2.2–acre parcel to the Bartons. In 1982 the Bartons, in a single deed, conveyed both lot 13 and the 2.2–acre parcel to First Interstate Bank. In 1984 the Bank sold lot 13, and, through a series of further conveyances, lot 13 came to be owned by Defendants. The 1984 conveyance left the 2.2–acre parcel "landlocked."

In 1992 the Bank conveyed the 2.2–acre parcel to Plaintiff by special warranty deed. Plaintiff, who is a realtor, was provided both a title commitment and a title policy that indicated the property he was buying had problems with access and that access was therefore not insured. The 1992 appraisal prepared in conjunction with the sale also decreased the value of the parcel by 50% because "quality of access was a factor[.]"

## II. DISCUSSION

### A. Easement by Necessity

■ Easements by necessity arise from an implied grant or reservation of right of ingress and egress to a landlocked parcel. *Herrera v. Roman Catholic Church,* 112 N.M. 717, 720, 819 P.2d 264, 267 (Ct.App. 1991). In order to uphold an easement by necessity a court must find a conveyance of a portion of the grantor's land that, after the severance of the two parcels, creates a necessity to pass over one of them to reach any road or public street. Roger A. Cunningham et al., *The Law of Property* § 8.5, at 447 (1984). An easement by necessity requires:

(1) unity of title, indicating that the dominant and servient estates were owned as a single unit prior to the separation of such tracts, *Brooks v. Tanner,* 101 N.M. 203, 680 P.2d 343 (1984); (2) that the dominant estate has been severed from the servient tract, thereby curtailing access of the owner of the dominant estate to and from a public roadway; and (3) that a reasonable necessity existed for such right of way at

the time the dominant parcel was severed from the servient tract.

*Herrera,* 112 N.M. at 720, 819 P.2d at 267.

### B. *Unity of Title*

Defendants argue, and the district court agreed, that in New Mexico the unity of title necessary to sustain an easement by necessity requires that the dominant and servient estates be a single undivided parcel prior to the conveyance at issue. Defendants rest their argument primarily on language in *Herrera* that "the dominant and servient estates were owned as a *single unit* prior to the separation of such tracts[.]" *Id.* (emphasis added). However, the language "owned as a single unit" can be read to require no more than the estates were contiguous and had the same owner. In any event, since the nature of the original ownership of the property was not an issue in *Herrera,* this language is dicta. *See Rocky Mountain Life Ins. Co. v. Reidy,* 69 N.M. 36, 40, 363 P.2d 1031, 1035 (1961) (language unnecessary to decision of issues is dicta and not binding as a rule of law).

That *Herrera* did not mean to require both estates be carved out of a previously undivided parcel is evidenced by the legal authority cited in that case. For example, the above quoted passage cited *Brooks v. Tanner,* 101 N.M. 203, 680 P.2d 343 (1984). The facts in *Brooks* do not support Defendants' argument that the dominant and servient estates must derive from a "single unit." In *Brooks* the seller owned six lots east of Albuquerque. The buyer purchased two lots and a portion of two other lots. Our Supreme Court rejected an easement by necessity but not because the seller had subdivided his lots prior to the sale. To the contrary, our Supreme Court used language that implied the prior subdivision of the estate was not a legal impediment:

> "A way of necessity can only arise where an owner of property severs a portion of his property and the portion retained or sold is cut off from access to a public route by the land from which it was severed." The fundamental requirement of common ownership[ ] is lacking in the instant case. There is *no* proof that Seller ever *owned*

the [dominant] tract in addition to the [servient] lots he owned in the [s]ubdivision, or that he conveyed or retained portions thereof in a manner which would landlock the [dominant] tract.

101 N.M. at 208, 680 P.2d at 348 (emphasis added) (citations omitted) (quoting *Amoco Prod. Co. v. Sims,* 97 N.M. 324, 326, 639 P.2d 1178, 1180 (1981)). The language of the *Brooks* opinion certainly offers no support for the proposition that the dominant and servient estates must have been part of an undivided parcel at the time of the conveyance allegedly creating an easement by necessity.

In addition to *Brooks,* the *Herrera* decision also relied upon *Otero v. Pacheco,* 94 N.M. 524, 612 P.2d 1335 (Ct.App.), *cert. denied,* 94 N.M. 674, 615 P.2d 991 (1980). The facts in *Otero* also undercut the argument that New Mexico requires a dominant and servient estate to derive from a single undivided parcel. The defendants in *Otero* acquired title to two lots in 1944. Defendants installed a sewer line from their home on lot 5, across lot 4, to the street. Title to lot 4 then passed through several owners until it was conveyed to the *Otero* plaintiffs. The district court found that defendants had an easement by implied reservation across lot 4. This Court affirmed even though the original owner had purchased the subdivided lots and treated them as separate units prior to creating the easement.

In addition to the language in *Herrera,* Defendants rely upon *Times Square Properties, Inc. v. Alhabb Realty Corp.,* 117 N.Y.S.2d 901 (Sup.Ct.1952), *aff'd,* 282 A.D. 1024, 126 N.Y.S.2d 887 (1953). In *Times Square* the court declined to imply an easement and observed that, although both the dominant and servient estates derived from a common owner, the common owner acquired the property by separate deeds and the parcels were treated as separate properties. *Times Square,* however, involved a preexisting easement by implication rather than a strict easement by necessity. Since *Otero* also dealt with an easement by implication, *Times Square* appears to conflict implicitly with *Otero.* Moreover, as to the unity-of-title element, the relevant language of *Times*

*Square* is dicta. *See United States v. O'Connell,* 496 F.2d 1329, 1334 (2d Cir.1974) (rejecting as dicta the *Times Square* requirement of an undivided parcel).

Defendants also place reliance upon a line of Texas cases which refer to the division of a "unit" or "single tract" as a prerequisite in easement by necessity cases. *See Koonce v. Brite Estate,* 663 S.W.2d 451 (Tex.1984). In *Koonce,* however, there was an absence of an identical set of concurrent owners. *See* Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 4.02[2][a], at 4–12 (1988). However, to the extent other Texas cases have required a previously undivided parcel to support unity of title, we find the *Restatement of the Law Property (Servitudes)* Section 2.15 (Tentative Draft No. 1, 1989) [hereinafter *Restatement* ] persuasive and decline to adopt the Texas position.

The most recent proposed revisions to the *Restatement* specifically recognize ownership, not lot divisions, as the key element when considering unity of title. Section 2.15, which covers "Servitudes by Necessity," makes it clear unity of title does not require the dominant and servient estates be severed from a previously undivided single parcel. Comment c to proposed Section 2.15 provides in part:

> Servitudes by necessity arise only on severance of rights held in a unity of ownership. This severance can take place when a grantor, who owns several parcels, conveys one or more to others. It can also take place when a grantor divides a single parcel into two or more parcels, and, it can take place when a grantor conveys less than full ownership in a single parcel.

*Id.* at 188.

Decisions from other jurisdictions have found the unity of title required to support an easement by necessity even though the property had previously contained multiple lots or even variations in the form of ownership. *See, e.g., Dixon v. Feaster,* 448 So.2d 554, 557–58 (Fla.Dist.Ct.App.1984) (multiple tracts); *Traders, Inc. v. Bartholomew,* 142 Vt. 486, 459 A.2d 974, 978–79 (1983) (multiple parcels); *Roemer v. Pappas,* 203 Cal.App.3d 201, 249 Cal.Rptr. 743, 745–46 (1988) (equitable title).

For the above reasons, we hold that unity of title under New Mexico law does not require the dominant and servient estates be carved out of a previously undivided parcel.

In light of our holding, we do not need to address the district court's conclusion that the divided lots were never "recombined." The critical time in determining the existence of an easement by necessity is the time when the dominant estate is severed from the servient estate. *Herrera,* 112 N.M. at 720, 819 P.2d at 267. Therefore, the 1984 conveyance by the Bank, not the 1957 conveyance by SDC, is the appropriate focus in this case.

### C. *Intention of the Parties*

■ Although urging us to adopt the district court's interpretation of the "single parcel" requirement for unity of title, Defendants contend that if we reject this construction of the law, as we have, then "the affidavits and other pleadings on file create factual issues which the district court has not considered in the first instance." Plaintiff argues "the facts established below are sufficient to permit this Court to establish an easement by necessity over Lot 13[.]" Resolution of this dispute depends in part on what proof is necessary to establish an easement by necessity.

English courts began to develop general principles to deal with the conveyance of landlocked realty as early as the fourteenth century. James W. Simonton, *Ways by Necessity,* 25 Colum.L.Rev. 571, 572 (1925). From an early date it was a recognized legal maxim that "anyone who grants a thing to someone is understood to grant that without which the thing cannot be or exist." *Id.* In the seventeenth century Chief Justice Glyn added, "it is not only a private inconvenience, but it is also to the prejudice of the public weal, that land should lie fresh and unoccupied[.]" *Id.* at 574 (quoting from *Packer v. Welsted,* 2 Sid. 39, 111 (1658)). Public policy remained the stated basis for the servitude of necessity until the nineteenth century when the focus shifted back to the intent of the parties. *Restatement, supra,* § 2.15, cmt. a, at 185.

Several factors dictate that the easement by necessity rests more heavily upon the intent of the parties than a public policy in favor of productive land use. First, it may well be questioned whether it is still universally in the public interest to prohibit land from lying "fresh and unoccupied." *See, e.g.,* NMSA 1978, § 7–36–20 (Repl.Pamp.1993) ("Green Belt" law giving preferential tax treatment to agricultural land); *see also* James D. Griffin, Comment, *Land Use Planning—New Mexico's Green Belt Law,* 8 Nat.Resources J. 190 (1968).

Second, it is clear that if the imposition of easements by necessity were truly required by public policy, those conveyances which clearly negated any access would be void. *See* Edmond H. Bodkin, *Easements of Necessity and Public Policy,* 89 Law Q.Rev. 87, 90 (1973). However, "[t]he public policy favoring the productive use of land does not override the landowner's freedom to give up the right to ingress and egress." Bruce & Ely, *supra,* § 4.02[3], at 4–26; *see also* Gerald Korngold, *Private Land Use Arrangements* § 3.10, at 44 (1990).

Third, the law allows landlocked parcels to remain in that condition where they do not meet the requirements for imposition of an easement by necessity. *See, e.g., Amoco Prod. Co. v. Sims,* 97 N.M. 324, 639 P.2d 1178 (1981).

Fourth, operational rules by which easements by necessity are construed also indicate that the implied intent of the parties, rather than public policy, is the basic rationale underlying easements by necessity. For example, the required necessity must exist at the time of severance. This requirement is based on the concept that if the estate is readily accessible by other means at the time of severance, there can be little basis to infer intent to preserve access. *See State v. Innkeepers of New Castle, Inc.,* 271 Ind. 286, 392 N.E.2d 459, 463–64 (1979); *see also* Stewart E. Sterk, *Neighbors in American Land Law,* 87 Colum.L.Rev. 55, 64 (1987).

Finally, the imposition of an easement for public policy reasons can raise questions of compensation. Korngold, *supra,* § 3.09, at 42. Compensation problems are avoided by viewing the common grantor of the two estates, rather than governmental policy, as the source of the burden upon the servient tenement.

Therefore, the implied intention of the parties is a more reliable foundation than public policy upon which to build the analytical framework necessary to sustain easements by necessity; it is only when the record provides absolutely no insight from which an inference as to the intent of the parties can be drawn that public policy is employed as a significant factor.

■ The application of the above legal elements requires a fact-based inquiry depending on the language of the deed and surrounding circumstances. Korngold, *supra,* § 3.11, at 47. If the intent of the parties as to the creation of an easement by necessity is unclear, then intent becomes a question of fact and summary judgment is inappropriate. *See Hewitt v. Meaney,* 181 Cal.App.3d 361, 226 Cal.Rptr. 349, 351–54, *review denied,* (July 31, 1986); *Luthy v. Keehner,* 90 Ill. App.3d 127, 45 Ill.Dec. 509, 512, 412 N.E.2d 1091, 1094 (1980); *cf. State ex rel. State Highway Dep't v. Intertribal Indian Ceremonial Ass'n,* 82 N.M. 797, 799, 487 P.2d 906, 908 (1971) (intent of conveyance unclear, precluding summary judgment).

Although each party contends that the evidence of record entitles them to summary judgment in their favor, we do not believe that the issue of intent can be determined on this record as a matter of law. Therefore, we do no more than set aside the summary judgment granted to Defendants.

### III. *CONCLUSION*

We hold that New Mexico law does not require the dominant and servient estates be carved out of a single undivided parcel. Unity of title sufficient to support an easement by necessity exists if the grantor owns both the dominant and servient parcels at the time of severance. Since the creation of an easement by necessity depends upon the intent of the parties, as manifested by all the circumstances, and since such intent cannot be determined as a matter of law from the present record, we reverse the summary judgment

and remand the case to the district court for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

ALARID and HARTZ, JJ., concur.