This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**VERNON C. TURLEY and**
**ALICE V. TURLEY,**

     Plaintiffs-Appellees,

v.                                  **NO. 31,404**

**ALFONSO M. VALDEZ and**
**MARGARITA CH. DE MURGUIA,**

     Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

Sanders, Bruin, Coll & Worley, P.A.
Kelly Mack Cassels
Roswell, NM

for Appellees

Charles E. Hawthorne, Ltd.
Charles E. Hawthorne
Ruidoso, NM

for Appellants

## MEMORANDUM OPINION

**WECHSLER, Judge.**

Defendants Alfonso Valdez and Margarita Ch. De Murguia appeal the district court's judgment determining that Plaintiffs Vernon and Alice Turley (formerly Markham) hold an easement by necessity over a strip of Defendants' property in order to access a public roadway. We hold that (1) the district court did not err in determining, as a matter of law, that the easement by necessity exists; and (2) the district court's factual findings challenged by Defendants are supported by sufficient evidence. Accordingly, we affirm the district court's judgment.

**BACKGROUND**

Plaintiffs filed a complaint for quiet title to an easement by necessity across a parcel of real property owned by Defendants. The complaint sought a declaration that Plaintiffs had an access easement (the Turley easement) over a fifty-foot wide strip of Defendants' property (the transferred strip) in order for Plaintiffs to access a public roadway. Plaintiffs' complaint based its claim for relief on the ground that the Turley easement was an easement by necessity.

The pertinent history of the subject land began on November 30, 1978 when William A. Gilcrease conveyed a 19.03 acre tract of land (unified tract) to gSnidow, Inc. (gSnidow). By virtue of gSnidow's deed, gSnidow, its successors and assigns received the perpetual right to travel from New Mexico State Highway 37 (Highway

2

37) to the western boundary of an adjacent property to the north of the unified tract using a series of road easements (the road easements) that ran along the northern boundary of the unified tract.

On December 17, 1987, gSnidow conveyed by warranty deed to Wallace H. Cardwell and Ardeth M. Cardwell (the Cardwells) a 5.12 acre portion of the unified tract (subsequently referred to as the Valdez tract). The Valdez tract was located on the northwest portion of the unified tract. The Cardwells' deed to the Valdez tract also conveyed use of the road easements to the Cardwells. On August 30, 1988, gSnidow conveyed by warranty deed the remaining 13.91 acres of the unified tract to Samuel and Beverly Sparks (the Sparks). Also conveyed were the various roadway easements for access to and egress from the 13.91 acre tract to Highway 37.

The Sparks subsequently entered into a real estate contract on October 12, 1988, selling a portion of the 13.91 acre tract (the Turley tract) to Plaintiffs. The real estate contract conveyed beneficial title to the Turley tract to Plaintiffs and also conveyed beneficial title to the road easements. The Turley tract is located immediately south of the Valdez tract. The Turley tract is not contiguous to the road easements, although Plaintiffs mistakenly believed that the road easements provided them access to their property from Highway 37. The road easements terminated 247 feet from the property line of the Turley tract. Plaintiffs visited their property several times yearly,

and they accessed the property using the road easements and then crossed the 247 feet from the road easements to the Turley tract using a portion of the tract retained by the Sparks.

The Sparks retained until 1993 the remaining portion of the unified tract that did not comprise either the Valdez tract or the Turley tract. By warranty deed, on April 22, 1993, the Sparks conveyed the remaining portion of the tract (hereafter the Shackelford tract) to First National Bank of Albuquerque as custodian for the Walter W. Becker IRA-SEP. The Shackelford tract is located immediately east of and shares a border with the Valdez tract and the Turley tract. The conveyance of the Shackelford tract specifically reserved "an easement for ingress, egress[,] and underground utilities for the benefit of the owners . . . of that certain parcel of land conveyed by the [g]rantor herein to [Plaintiffs], as evidenced by that certain [r]eal [e]state [c]ontract dated October 12, 1988." On December 3, 1999, First National Bank conveyed the Shackelford tract to Brian Lockhart by warranty deed. On December 16, 1999, Lockhart conveyed the Shackelford tract and access to the road easements to Walter Becker and Francoise Becker (the Beckers), and the deed also contained an express reservation of the easement.

Defendants obtained title to the Valdez tract on June 13, 2002 from the Beckers for a purchase price of $450,000. The deed did not include the fifty-foot wide

3

transferred strip that is the subject of this dispute. Subsequently, on July 26, 2002, the Beckers filed a boundary survey plat indicating that they transferred the transferred strip to Defendants by warranty deed. The July 26, 2002 boundary survey plat also created a fifteen-foot "road and utility" easement (the alternative route) that starts from the southeastern corner of the Turley tract, runs along the southern, then the eastern border of the Shackelford tract, and into the road easements to benefit the Turley tract. Also on July 26, 2002, the Beckers conveyed the reduced Shackelford tract, without the transferred strip, to the Shackelfords by warranty deed.

On October 22, 2004, the Beckers conveyed the enlarged Valdez tract, which included the transferred strip, to Defendants by warranty deed. On September 18, 2006, the Sparks conveyed title to the Turley tract and the road easements to Plaintiffs, consummating the purchase memorialized by the real estate contract of October 12, 1988.

After a bench trial held on February 28, 2011, the district court concluded that an easement by necessity existed over the transferred strip, which was now part of the Valdez tract since 1988, and that the Sparks intended to convey to Plaintiffs an access easement to the Turley tract when the Shackelford tract and Turley tract were severed in 1988.

Defendants timely appealed the district court's ruling. On appeal, Defendants

4

argue that the district court erred as a matter of law (1) in determining that an easement by necessity existed when it was undisputed that Plaintiffs had another means of access, (2) by failing to hold that an easement by necessity can only arise when an owner of property severs a portion of his property and the portion retained or sold is cut off from access to a public route by the land from which it was severed, (3) by failing to find that easements by necessity cannot be founded in an express grant, but are dependent on an implied grant of the intention of the parties, and (4) by failing to find that an easement by necessity does not arise because it would be more convenient than another easement. Additionally, Defendants argue that there was insufficient evidence to support several of the district court's factual findings that (1) Defendants had actual knowledge of the existence of the Turley easement on the fifty-foot strip, (2) it would cost $50,000 for Plaintiffs to build a roadway along the alternative route, and (3) an improvement survey report created an easement on the transferred strip. We first address Defendants' legal arguments regarding the easement by necessity and then address Defendants' sufficiency of the evidence arguments.

**EASEMENT BY NECESSITY**

**Generally**

Easements may be created by an express agreement, prescription, or by

5

implication. *Herrera v. Roman Catholic Church*, 112 N.M. 717, 720, 819 P.2d 264, 267 (Ct. App. 1991). An easement by necessity arises "where an owner of property severs a portion of his property and the portion retained or sold is cut off from access to a public route by the land from which it was severed." *Brooks v. Tanner*, 101 N.M. 203, 208, 680 P.2d 343, 348 (1984) (internal quotation marks and citation omitted). Easements by necessity are created by implied grants or reservations of the right of ingress and egress of a landlocked parcel. *Hurlocker v. Medina*, 118 N.M. 30, 31, 878 P.2d 348, 349 (Ct. App. 1994). Although the rationale underlying the acceptance of easements by necessity was originally the public policy favoring the beneficial use of land, the basis for recognizing easements by necessity in the modern sense is to effectuate the intent of the parties. *Id.* at 33, 878 P.2d at 351. Easements by necessity are based on a presumption that when a grantor conveys property, absent a clear indication to the contrary, the grantor intends to convey to the grantees a means of access to the property in question. *Herrera*, 112 N.M. at 720, 819 P.2d at 267.

In order for an easement by necessity to exist, the party asserting its existence must prove three elements:

> (1) unity of title, indicating that the dominant and servient estates were owned as a single unit prior to the separation of such tracts; (2) that the dominant estate has been severed from the servient tract, thereby curtailing access of the owner of the dominant estate to and from a public roadway; and (3) that a reasonable necessity existed for such right of way at the time the dominant parcel was severed from the servient tract.

6

*Hurlocker*, 118 N.M. at 31-32, 878 P.2d at 349-50 (internal quotation marks and citations omitted).

The district court found that all three elements of an easement by necessity were met. Particularly, it found that (1) the dominant estate (the Turley tract) and the servient estate (the Shackelford tract) were owned jointly as a single unit by gSnidow and the Sparks; (2) the Sparks sold the Turley tract, while retaining the Shackelford tract without properly granting the promised access easement across the Shackelford tract and curtailed access from the Turley tract to and from the public roadway; (3) at the time that the dominant and servient estates were severed in 1988, there existed a reasonable necessity for a right of way from the Turley tract to and from the public roadway. Additionally, the district court found that the alternative route proposed by Defendants in 2002 did not exist at the time the Turley tract was severed from the Shackelford tract and the easement by necessity was created and that it is not a reasonable alternative easement route along the transferred strip.

**Unity of Title**

Defendants first argue that unity of title between the dominant and servient estates did not exist and therefore the district court erred as a matter of law in determining that an easement by necessity existed. Specifically, Defendants argue

that the common ownership requirement was lacking because "at the time the Valdez [t]ract was severed, the Turley [t]ract had not been created, it had access [to the road easements] through the [Shackelford] [t]ract, and it was not landlocked." Further, Defendants argue that unity of title did not exist because at the time the Turley tract was created, there was no common ownership of the Turley tract and the Valdez tract. This issue requires the application of fact to law, which is an issue of law that we review de novo. *See San Juan Agric. Water Users Ass'n v. KNME-TV*, 2010-NMCA-012, ¶ 7, 147 N.M. 643, 227 P.3d 612 (stating that we review the legal question of the application of law to fact de novo).

Defendants correctly acknowledge that the Turley tract is the dominant estate for purposes of the easement by necessity in this case. However, Defendants' argument is premised on the incorrect assertion that the Valdez tract was the servient estate at the time the easement was created. The district court concluded that the easement by necessity arose in 1988 at the time that Plaintiffs acquired the Turley tract from the Sparks and the Sparks retained the Shackelford tract. The servient estate of the easement by necessity was the Shackelford tract because at the time the Turley tract became severed from the unified tract and therefore lost access to the road easements, the transferred strip used by Plaintiffs to access the road easements was part of the Shackelford tract, not the Valdez tract. *See Hurlocker*, 118 N.M. at 31-32,

8

878 P.2d at 349-50 (referring to the servient estate as the tract used by the dominant estate to access a public roadway); *see also Restatement (Third) of Prop. (Servitudes) § 1.1(1)(c), at 8 (2000)* (defining the servient estate as the estate that is burdened by the obligation on the land).

The district court found, and it is unchallenged on appeal, that the Sparks owned the Turley tract and the Shackelford tract as one unit beginning on August 30,1988, after the Sparks acquired the property from gSnidow. The two tracts were then separated when the Sparks retained the Shackelford tract but sold the Turley tract to Plaintiffs on October 12, 1988 and conveyed beneficial title to Plaintiffs to the Turley tract. Under these unchallenged findings, the element of unity of title was met because prior to the separation of the tracts, the Sparks held common ownership of the Turley tract and the Shackelford tract. *See Hurlocker*, 118 N.M. at 31, 878 P.2d at 349 (stating that unity of title is met if the estates were owned as a single unit prior to the separation of the tracts).

To the extent that Defendants argue that unity of title requires that the Valdez tract and the Turley tract have common ownership on July 26, 2002, when title to the transferred strip passed from the Shackelford tract to the Valdez tract as evinced by the boundary survey plat, we disagree. As we have stated, the district court found that the reasonable necessity arose in 1988, when the Turley tract became landlocked from

9

the road easements upon the separation of the Turley tract and the Shackelford tract. The Shackelford tract, in particular the transferred strip, therefore became burdened by the easement. When the transferred strip was conveyed to Defendants in 2002 and became part of the Valdez tract, the transferred strip was already subject to the easement by necessity created in 1988 and passed to the Valdez tract upon the 2002 conveyance of the transferred strip. *See Restatement*, *supra*, § 1.2(3), at 12 ("The burden of an easement or profit is always appurtenant."); *see also id.* § 1.1(1)(a), at 8 (stating that "the right or obligation [of an easement] passes automatically to successive owners or occupiers of the land or the interest in land with which the right or obligation runs"). The district court did not err in determining that unity of title existed.

**Reasonable Necessity**

Defendants next make two arguments regarding the district court's legal conclusion that a reasonable necessity existed for the creation of the easement by necessity. Both issues require the application of fact to law, which are issues of law that we review de novo. *See San Juan Agric. Water Users Ass'n*, 2010-NMCA-012, ¶ 7 (stating that we review the legal question of the application of law to fact de novo).

Defendants first argue that the district court erred as a matter of law in

"determining that an easement [by] necessity existed when it was undisputed that [Plaintiffs] had another means of access." Particularly, Defendants contend that the real estate contract granted the Turley tract an express access easement across the Shackelford tract and that this access easement was granted in 2002 by the boundary survey plat when the Beckers reserved the alternative route for the Turley tract. *See Martinez v. Martinez*, 93 N.M. 673, 676, 604 P.2d 366, 369 (1979) ("Concluding as we do that there is an express easement in the deed, it becomes unnecessary to decide the questions of easement by implication or necessity.").

The district court concluded that the easement by necessity was created in 1988 when the Turley tract was severed from the Shackelford tract due to the Sparks' conveyance of the Turley tract to Plaintiffs and the attendant reasonable necessity at this time so that Plaintiffs could access Highway 37. Defendants contend that this conclusion was incorrect because the real estate contract granted an express easement and that this express easement was realized in 2002 when the boundary survey plat reserved the alternative route.

However, the district court found that the alternative route was not "created" until 2002, fourteen years after the easement by necessity attached to the Shackelford tract. Further, the district court found that, although the real estate contract specifically reserved an easement for ingress, egress, and underground utilities for the

11

benefit of the Turley tract, the Sparks sold the Turley tract "without properly granting the promised access easement." These unchallenged factual findings negate the premise of Defendants' argument that the real estate contract and the boundary survey plat granted the Turley tract an express access easement. The real estate contract did not contain an express easement. *See Tres Ladrones, Inc. v. Fitch*, 1999-NMCA-076, ¶ 17, 127 N.M. 437, 982 P.2d 488 (stating that a district court's unchallenged findings of fact are binding on appeal).

In a related argument, Defendants also contend that "the [district] court erred as a matter of law when it failed to find that easements [by] necessity cannot be founded in an express grant, but are dependent on an implied grant or the intention of the parties." However, Defendants fail to point to, and we do not find, any finding of the district court that the easement in this case could not be founded upon an express grant. Instead, as we have summarized, the district court found that the Sparks may have intended to create an express access easement to benefit the Turley tract, but that the contract failed to do so, and a reasonable necessity therefore arose for an easement by necessity.

Next, Defendants argue that the district court erred "as a matter of law when it failed to find that an easement [by] necessity does not arise because it would be more convenient than another easement." Defendants cite *Venegas v. Luby*, 49 N.M. 381,

12

386, 164 P.2d 584, 587 (1945), for the proposition that an "easement [by] necessity does not arise because it is more convenient to use than another easement." Indeed, in *Venegas*, our Supreme Court held that, in order for a reasonable necessity to exist, "it is essential that such easement be necessary, and not merely convenient, to the beneficial enjoyment of the dominant portion of the property." *Id.* (internal quotation marks and citation omitted). The challenged factual finding that Defendants contend illustrates that the district court relied on "mere convenience" as sufficient to satisfy the reasonable necessity requirement reads in its entirety:

> In light of the existing conveyances of the [r]oad [e]asements, it is contrary to common sense to believe that the Sparks would have intended [Plaintiffs] to gain access through the outer perimeter of the [Shackelford] [t]ract [referring to the alternative route], which they retained, when the [r]oad [e]asements ran to just 247 feet away from the Turley [t]ract and could be accessed through the retained [Shackelford] [t]ract.

Contrary to Defendants' assertion, this finding does not establish that the district court found a reasonable necessity for the easement by necessity based on the easement through the transferred strip being more convenient than the alternative route. Instead, the finding indicates that the district court used the convenience and proximity between the Turley tract and the road easements through the transferred strip as evidence that the Sparks intended an easement through the transferred strip when the Turley tract and the Shackelford tract became separated in 1988. *See*

13

*Hurlocker*, 118 N.M. at 34, 878 P.2d at 352 (stating that easements by necessity "rest[] more heavily upon the intent of the parties"). Again, the premise of Defendants' argument fails.

Additionally, the district court found that the alternative route was not a reasonable alternative to the Turley easement. Defendants challenge the sufficiency of the evidence for the factual basis for the district court's conclusion, particularly the cost of building a roadway over the alternative route, which we will address in the next section.

**SUFFICIENCY OF THE EVIDENCE**

Defendants next argue that several of the district court's factual findings were unsupported by sufficient evidence that (1) Defendants had actual knowledge of the existence of the Turley easement by necessity on the transferred strip when it was conveyed in 2002, (2) it would cost $50,000 to build a roadway on the alternative route, and (3) an improvement survey report created an easement on the transferred strip.

**Standard of Review**

When addressing arguments regarding the sufficiency of the evidence, "[i]f the verdict below is supported by substantial evidence, which we have defined as such relevant evidence that a reasonable mind would find adequate to support a conclusion,

we will affirm the result." *Weststar Mortg. Corp. v. Jackson*, 2003-NMSC-002, ¶ 8, 133 N.M. 114, 61 P.3d 823 (internal quotation marks and citation omitted). We review the evidence in a light favoring the verdict and resolve conflicts in favor of the prevailing party. *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 12, 146 N.M. 853, 215 P.3d 791. "It is not the task of a reviewing court to sit as a trier of fact or to reweigh the evidence." *Weststar Mortg. Corp.*, 2003-NMSC-002, ¶ 8. "Additionally we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177.

**Actual Knowledge**

We first address Defendants' argument that insufficient evidence supported the district court's conclusion that Defendants had actual or constructive notice of the existence of the Turley easement on the transferred strip. Defendants specifically challenge the district court's finding number 61, which states:

> Because the above described conveyances put the general public, including . . . Defendants, on notice of the need for, and desire to provide, access to . . . Plaintiffs' property for ingress and egress, there was not a legitimate purpose for . . . Defendants to purchase the strip of land other than to lock out . . . Plaintiffs from accessing their property.

Without citation to the record, Defendant Valdez points to his own testimony that he purchased the land so that his grandchildren could have an area to play and that he

first learned of Plaintiffs' claim of the easement when Plaintiffs contacted him in 2009. Although Defendants argue that this evidence supports his conclusion that Defendants did not have actual or constructive notice, when reviewing the sufficiency of the evidence, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12.

The district court made other factual findings regarding actual and constructive notice of the Turley easement. Specifically, the district court additionally found that:

> Defendants had actual notice of the existence of the Turley [e]asement on the [t]ransferred [s]trip before they closed on the purchase[] by their own [t]itle [c]ommitment . . . and they were on constructive notice of the Turley [e]asement's existence by virtue of the reservations in the [c]hain of [t]itle to the [Shackelford] [t]ract . . ., a portion of which they purchased when they acquired the [t]ransferred [s]trip.

The district court's finding is supported by sufficient evidence. Indeed, the title commitment reveals that the title commitment received by Defendants prior to the purchase of the Valdez tract and the transferred strip lists the Turley easement as an encumbrance on the property. Additionally, sufficient evidence supports the district court's factual finding that the reservations on the chain of title for the Shackelford tract constitute constructive notice for Defendants. Specifically, (1) the April 22, 1993 warranty deed conveying the Shackelford tract to First National Bank; (2) the

16

December 3, 1999 warranty deed conveying the Shackelford tract to Brian Lockhart; and (3) the December 16, 1999 warranty deed conveying the Shackelford tract to the Beckers all referenced the Turley easement as an encumbrance on the tract. The evidence presented is sufficient for a reasonable factfinder to conclude that Defendants had actual and constructive notice of the Turley easement prior to the purchase of the transferred strip. *See Weststar Mortg. Corp.*, 2003-NMSC-002, ¶ 8 (stating that we will affirm factual conclusions supported by evidence that a reasonable mind would find adequate to support the conclusion); *see also Tres Ladrones, Inc.*, 1999-NMCA-076, ¶ 16 ("Where there is conflicting evidence, the [district] court, as fact finder, resolves all disparities in the testimony and determines the weight and credibility to be accorded to the witnesses.").

**Cost of Alternative Route**

Defendants next challenge the district court's finding that the cost of building a road on the alternative route would be $50,000. The district court found that:

> [The alternative] route proposed by Defendants traverses steep slopes, gullies and ravines, rather than the flat slope on the [t]ransferred [s]trip and it would cost $50,000 to build a roadway along the [alternative] route.

The district court based this finding on testimony from Cal Turley. Turley testified that he is a general contractor. He testified that he is familiar with earth movement, earth work, and earth stabilization due to his work as a general contractor. He

17

testified that in his estimation, the cost would "well exceed" $50,000 to construct a roadway on the alternative route, if a road could even be built at all. He further testified that the cost would be so high because the terrain over the area contains gullies, ravines, hilltops, and mountains.

Defendants argue that this testimony was insufficient to support a reasonable conclusion that it would cost $50,000 to build a road on the alternative route because "[a]n estimate of the cost of the construction of a road along the [alternative route] must be given by an expert" and Turley "was not qualified as an expert in road building." However, Defendants do not point to any authority requiring that construction estimates must be made by an expert witness pursuant to Rule 11-703 NMRA, and we assume that no authority exists. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). We therefore do not address Defendants' argument that expert testimony was required. *See id.* ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal.").

Further, although Turley was not designated as an expert by the district court, Plaintiffs established a proper foundation by the testimony that Turley was a general contractor by trade and was familiar with construction costs involving earth

movement, earth works, and earth stabilization. Turley's background combined with his personal knowledge of the alternative route is sufficient for a reasonable factfinder to conclude that it would cost $50,000 to build a road on the alternative route. *See Weststar Mortg. Corp.*, 2003-NMSC-002, ¶ 8 (stating that we will affirm factual conclusions supported by evidence that a reasonable mind would find adequate to support the conclusion). If Defendants wished to challenge Turley's estimate, they were free to do so on cross-examination or by presenting contradictory evidence.

**Improvement Survey Report**

Defendants lastly argue that insufficient evidence supports the district court's finding number 53 that an "improvement survey report created an easement on the [transferred] strip." However, Defendants' argument misconstrues the factual finding, and the district court did not find that the improvement survey report created the easement.

Finding number 53, in its entirety states:

> Plaintiffs' Ex. "P" is an improvement location report of the enlarged Valdez [t]ract. On it the draftsman noted the location of the Turley [e]asement. The [s]urveyor assumed, as did [Plaintiffs], that the Turley [e]asement would run the shortest distance between their [t]ract down to where their granted easement terminated on the private access road in front of the Valdez [t]ract.

The district court's finding indicates that it did not find that the improvement location report created the Turley easement. The district court's finding simply recognized that

a draftsman and Plaintiffs had a common assumption that the easement would run the shortest distance between the Turley tract and the road easements. Defendants do not challenge the finding in this regard.

**CONCLUSION**

We hold that (1) the district court did not err in determining, as a matter of law, that the Turley easement exists over the transferred strip, and (2) the district court's factual findings challenged by Defendants are supported by sufficient evidence. Accordingly, we affirm the district court's judgment.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**CYNTHIA A. FRY, Judge**

20