**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2014-NMCA-017

Filing Date: May 1, 2013

Docket No. 31,325

LOS VIGILES LAND GRANT
and MIKE MARTINEZ,

      Plaintiffs-Appellees,

v.

REBAR HAYGOOD RANCH, LLC,
ROCKY KNOB RANCH, LLC, and
JAMES and FLORENCE HOWARD,

      Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
Abigail Aragon, District Judge

Holland & Hart, LLP
Larry J. Montano
Julia Broggi
Adam G. Rankin
Santa Fe, NM

for Appellees

Comeau, Maldegen, Templeman & Indall, LLP
Stephen J. Lauer
Paula A. Cook
Santa Fe, NM

for Appellants

**OPINION**

**SUTIN, Judge.**

**{1}** This case offers the opportunity for this Court to remind the Bar of the wonderfully

sage observation of Judge Lynn Pickard that opened *Gracia v. Bittner*, 120 N.M. 191, 192, 900 P.2d 351, 352 (Ct. App. 1995). "Every litigated case is tried at least three times: there is the trial the attorneys intended to conduct; there is the trial the attorneys actually conducted; and there is the trial that, after the verdict, the attorneys wished they had conducted." *Id.* This case illustrates the point.

**{2}** In addition, we think it appropriate to repeat our continuing concern about the practice of some trial courts of adopting, verbatim, all or virtually all of a prevailing party's extensive requested findings of fact and conclusions of law in complex cases. This practice can all too often result in unsupported, ambiguous, inconsistent, overreaching, or unnecessary findings and conclusions. This Court looks askance at wholesale verbatim adoption of the prevailing party's extensive requested findings of fact and conclusions of law. And when appropriate, we will relax our usual deferential review.

**{3}** Plaintiffs and Appellees are Los Vigiles Land Grant (often referred to in this Opinion as Los Vigiles) and Mike Martinez. Defendants and Appellants are Rebar Haygood Ranch, LLC, Rocky Knob Ranch, LLC, and James and Florence Howard. In the district court, Plaintiffs claimed "an easement by implication/necessity" for ingress and egress to their properties over a road called the Sebastian Canyon Road. Plaintiffs also claimed a prescriptive easement over the road. After trial, the district court adopted verbatim and incorporated by reference all of Plaintiffs' requested sixty-six findings of fact and thirteen conclusions of law, and the court entered judgment in favor of Plaintiffs. In doing so, the court concluded that "Plaintiffs and both of them [were] each entitled to an easement by implication/necessity[.]" The court also stated that "Plaintiffs now own an easement for ingress and egress by grant from the Las Vegas Land Grant by implication[.]" In addition, the court concluded that both Plaintiffs were entitled to an easement by prescription. The court also awarded damages to Los Vigiles in the amount of $50,000 for loss of use of timber and an additional $5,000 for loss of aesthetic and other recreational-type uses. And the court awarded Martinez $2,500 for loss of use and enjoyment of his property.

**{4}** Defendants appealed. Defendants' points on appeal as we construe them are: Point I, Los Vigiles lacked standing, depriving the district court of subject matter jurisdiction; Point II, the district court applied improper legal standards to evaluate Los Vigiles's claims of easement, and Los Vigiles failed to establish any easement entitlement by clear and convincing evidence; and Point III, the damage awards were miscalculated and unsupported. We hold that Plaintiffs were granted ingress and egress easements by implication and necessity pursuant to and in conformity with the grant from the Las Vegas Land Grant. We also hold that the court did not err in awarding damages.

**{5}** We further hold that, pursuant to Plaintiffs' judicial concession, the district court's grant of easements by prescription is reversed on its merits. In their answer brief, Plaintiffs stated: "Only if the Court declines to uphold the trial court's ruling that Los Vigiles and Mr. Martinez established easements by implication and/or necessity will it be necessary to consider whether [they] established easements by prescription." At oral argument, Plaintiffs

2

confirmed this statement and disposition.

## BACKGROUND

**{6}** We set out here a bare minimum of the background of this case. Considerably more will come to light as issues are discussed.

**{7}** The properties and roads involved are situated northeast of Las Vegas and Montezuma, New Mexico. Sebastian Canyon Road (often referred to in this Opinion as "the road") runs from County Road A-11A north into and over Rebar Haygood Ranch property. It then continues through Martinez's property, then over other property of Rebar Haygood Ranch, then through Rocky Knob Ranch's property, then connecting with the Howards' property, before ultimately moving west into the property of Los Vigiles near its northern boundary. The present lawsuit came about after the owner of Rebar Haygood Ranch in 2010 prevented use of the road for travel to the Martinez and Los Vigiles properties by placing an impassable, welded gate structure at the road as it entered Rebar Haygood Ranch's southern property boundary.

**{8}** Defendants challenge no less than one-third of the district court's sixty-six findings of fact. Quite unfortunately, when it comes to the easement issues, in discussing the highly factually detailed issues, the briefs fail to simplify the difficult and time-consuming process of ascertaining whether findings are supported in the evidence. Neither party bothered to clearly and chronologically outline critical dates combined with descriptions of events accompanied by cites to the record. The parties have left this arduous task to this Court. Parties on appeal must bear the inevitable consequence that we may tend to view the facts in a less-detailed manner than the parties would like. Nor did the parties carefully and adequately develop evidence at trial to answer various questions about Los Vigiles's existence and each easement's scope and limitations. A case with so many findings, some of questionable necessity and support, all adopted verbatim, with a third of them challenged, together with briefing sometimes more troubling than helpful, unduly complicates appellate review.

## DISCUSSION

### Preliminary Observations

**{9}** We first address Plaintiffs' quiet title claim. Plaintiffs titled their complaint as one to establish quiet title. They asked the court to "quiet Plaintiffs' title to the described roadway easement[.]" Yet Plaintiffs submitted no requested findings of fact and conclusions of law on the issue of quiet title, and the district court entered none nor entered a judgment or decree quieting title in any way. Plaintiffs later conceded that their quiet title claim was inappropriate. We do not address any arguments that relate to quiet title relief. Further, Plaintiffs have abandoned any claim or counterclaim that Los Vigiles was or is a land grant or a subgrant, having expressly conceded that as well.

3

**Point I:  Standing**

**{10}**    Defendants' primary argument in regard to standing and jurisdiction is that Los Vigiles is legally non-existent and, as such, the district court did not have subject matter jurisdiction to entertain Los Vigiles's claims.  Although Plaintiffs did not present evidence at trial in regard to Los Vigiles's property interest or of its trust or organizational status, Defendants failed in the district court to raise lack of standing or lack of subject matter jurisdiction.  To overcome their failure to preserve this issue, Defendants claim that the point must be addressed on appeal because the issue is one of jurisdiction.  *See Becenti v. Becenti*, 2004-NMCA-091, ¶ 13, 136 N.M. 124, 94 P.3d 867 (stating that lack of subject matter jurisdiction can be raised for the first time on appeal).

**{11}**    When standing is jurisdictional, it may be raised at any stage of the proceedings. *Gunaji v. Macias*, 2001-NMSC-028, ¶ 20, 130 N.M. 734, 31 P.3d 1008.  Of the federally derived standing requirements, "our courts have generally required that a litigant demonstrate injury in fact, causation, and redressability to invoke the court's authority to decide the merits of a case."  *N.M. Gamefowl Ass'n v. State ex rel. King*, 2009-NMCA-088, ¶ 13, 146 N.M. 758, 215 P.3d 67 (internal quotation marks and citation omitted).  "Whether a party has standing to bring a claim is a question of law which we review de novo."  *Id.* ¶ 12 (internal quotation marks and citation omitted).  Whether a court lacks subject matter jurisdiction is also a question reviewed de novo.  *See McNeill v. Burlington Res. Oil & Gas Co.*, 2008-NMSC-022, ¶ 12, 143 N.M. 740, 182 P.3d 121.

**{12}**    This issue calls for a historical analysis starting with the Las Vegas Land Grant.  The Las Vegas Land Grant was a Mexican land grant confirmed by an Act of Congress as Private Land Claim No. 20 on June 21, 1860.  *See* NMSA 1978, §§ 49-6-1 to -14 (1903, as amended through 1947).  It is undisputed that the lands in question in this action originated as part of the Las Vegas Land Grant.

**{13}**    The Town of Las Vegas, New Mexico, administered the Las Vegas Land Grant.  At various times, members of the Board of Trustees of the Town of Las Vegas (Las Vegas Trustees), who were appointed by the District Court for the Fourth Judicial District (sitting in San Miguel County, New Mexico), conveyed various parcels of the Las Vegas Land Grant to predecessors in interest to Martinez and to Defendants.  As well, Las Vegas Trustees also conveyed approximately 3,000 acres of the Las Vegas Land Grant to "Ricardo Varela, Justice of the Peace, Precinct No. 33, San Miguel County . . . and his successors in office" by deed dated in 1951 and recorded in 1952 (the Las Vegas Trustees' 1951 deed).  The Las Vegas Trustees' 1951 deed was placed in evidence as Plaintiffs' Exhibit 11.  The Las Vegas Trustees' 1951 deed states that the property was deeded to Varela as Justice of the Peace and his successors in office "IN TRUST" for specific uses by specific persons, namely:

> The said land and real estate hereinabove described to be used solely for grazing purposes by the inhabitants living within the exterior limits of Precincts numbered 33, Los Vigiles, as now constituted, Precinct No. 47, Hot

4

Springs, as now constituted, and also by the inhabitants of that portion of Precinct No. 8, Upper Las Vegas . . .; and the said inhabitants living within the exterior limits of the precincts and part of precinct hereinabove described shall also have the further right to use any and all dead timber and wood on said land for domestic purposes and uses only.

The deed states further that the land conveyed

shall, at all times, be used solely for and as the community property for the use as aforesaid of all of the residents and inhabitants of the said Precincts numbered 33, Los Vigiles, as now constituted, Precinct No. 47, Hot Springs, as now constituted, and that part of Precinct No. 8 described in Paragraph No. 1 hereof.

The deed goes on to provide, among other things, that the residents are to pay the real estate taxes based on assessments in the name of Varela and in the names of Justices of the Peace of Precinct No. 33 that succeed Varela.

{14} Plaintiffs' original, amended, and second amended complaints, and their requested findings of fact, all refer to the present grantee in trust of the property described in the Las Vegas Trustees' 1951 deed as something commonly called the "Los Vigiles Land Grant." Owing to the parties' failure to consider it during trial, the following important issue remained unexamined by the district court: How did ownership or trust and trustee status of the property evolve from the 1951 deed, which granted the property to a named justice of the peace and his successors for the benefit of certain inhabitants and residents, to apparent contemporary possession or holding of the property by "Los Vigiles Land Grant" for the benefit of its "members"? The missing link confusion was exacerbated by the district court's verbatim adoption of Plaintiffs' requested findings of fact, which included, among other findings, that: "[t]he Los Vigiles Land Grant is a subgrant and entity created by the Las Vegas Land Grant in 1951"; and "[t]he Los Vigiles Land Grant has been deeded property from the Las Vegas Land Grant, [a] portion of land approximately 3,004.64 acres as demonstrated by a deed entered into evidence as Plaintiffs' Exhibit 11 and filed of record on February 21, 1952[.]"

{15} Defendants' standing and jurisdiction arguments derive from Plaintiffs' initial claim of land grant status and the court's "subgrant" finding. These arguments need not be met given Plaintiffs' concession that Los Vigiles was and is not a land grant or a subgrant. Tangentially, Defendants appear to suggest that Los Vigiles lacks standing because the office of the justice of the peace referred to in the 1951 deed was abolished in 1966. Defendants also state that three voting precincts mentioned in the 1951 deed are "defunct" and that the deed did not provide for any type of "membership." Because Defendants fail to develop any argument as to the significance of these statements, we do not deem it necessary to address them. Based on our discussions that follow, we see no stumbling block created from the abolition of the office of the justice of the peace.

5

**{16}** Plaintiffs argue that the property was taken in trust and that Los Vigiles is an entity that holds the property pursuant to the Las Vegas Trustees' 1951 deed. Plaintiffs specifically argue that, although Los Vigiles may not be a land grant, it is nevertheless a legally existing entity—"a trust or association that possesses, administers, and cares for the lands commonly known as Los Vigiles Land Grant for the benefit of its members." Although now marching in the right direction, Plaintiffs' battle is uphill.

**{17}** Plaintiffs presented no documentary evidence in the district court linking Los Vigiles to a chain of title to or interest in the property in question. Their continued claim that Los Vigiles is a legal entity that "possesses, administers, and cares for" the property conveyed in the 1951 deed raises the question whether evidentiary support exists for the district court's finding that Los Vigiles was an "entity created by the Las Vegas Land Grant in 1951." Plaintiffs' entire proof presentation in the district court was made based on an unstated assumption that Los Vigiles somehow succeeded the statutory demise of the office of justice of the peace as an official or legal entity holding the property granted in the Las Vegas Trustees' 1951 deed in trust. Plaintiffs presented a series of witnesses who stated that they were "members" of Los Vigiles. One witness, Lalo Lovato, testified that he was the President of Los Vigiles and that he had been a member of Los Vigiles since 1951. Mr. Lovato also testified that Los Vigiles paid real estate taxes assessed on the property, had sixty members, had rules apparently defining "herederos"[1] as persons who could be members, and required that members pay "fees or taxes" as a condition of membership. Relying on the foregoing evidence, and on a continuing unstated assumption that Los Vigiles was a successor in interest to the property granted in trust in the 1951 deed, Plaintiffs assert that Los Vigiles "is most certainly an existing entity" with standing to sue.

**{18}** In their briefs, Defendants argue that Los Vigiles "may not properly suggest that its suit, on appeal, may somehow be morphed into a suit by the trust referenced in the 1951 [d]eed" and that Los Vigiles cannot prevail on the standing issue by contending that it is a trust or an association. First, because no such entity filed the action, and second, because Los Vigiles did not meet statutory requirements either for a trustee to sue on behalf of a trust or for an unincorporated association to sue. *See generally ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 30, 144 N.M. 471, 188 P.3d 1222 (discussing the requirements for an organization to assert standing in its organizational capacity). Nor, Defendants argue, does any document show that an association was created and, even if one were created, its duration was limited by statute to twenty years and would, by the time of this action, have gone out of existence. *See* NMSA 1978, § 53-10-7 (1937) (stating a twenty-year maximum term of existence for unincorporated associations).

**{19}** In short, at the close of briefing, Defendants' primary lack of standing argument reduced itself to an argument that Los Vigiles cannot have access to the court to assert its

---

[1] We assume that, under the circumstances, "herederos" in English, would be interpreted as "heirs."

easement claim because a named plaintiff that does not exist cannot be injured in fact. *See ACLU*, 2008-NMSC-045, ¶¶ 7, 12 (stating that the standing requirement at issue was injury in fact that gives the litigant who suffered the injury "a sufficiently concrete interest in the outcome of the issue in dispute" (internal quotation marks and citation omitted)).[2]

**{20}** Defendants' argument on this issue fell by the wayside at oral argument before this Court. Significantly, faced with the fact that the Las Vegas Trustees' 1951 deed granted the property to the office of a particular justice of the peace to hold the property in trust for the benefit of certain persons, at oral argument, Defendants conceded a trust exists that owns or possesses and holds the property for the benefit of those persons. Defendants decided to hang their hat on the contention that, even though it may be injured in fact, the trust had no standing because its claims were not brought by a trustee. We reject this contention. On the state of the record, the theory does not provide a basis on which to attack subject matter jurisdiction. From evidence at trial, a reasonable inference can be drawn that a trust or association or organization does in fact exist, commonly called Los Vigiles Land Grant, which appears, indisputably, to hold and possess the property for the benefit of certain individuals. With no evidence in the record to the contrary, and based solely on the record on appeal, whatever its entity status in form or legal existence, Los Vigiles can be presumed for the purposes of this action to be a lawful successor to the original named grantees of the property in question to hold the property for the benefit of the individuals described in the 1951 deed.

**{21}** Defendants' standing argument essentially boils down to this: because only a trustee is lawfully empowered to sue on behalf of a trust, only the trustee holds the right to institute an action on an easement claim and, therefore, the trustee, and not the trust, is the real party in interest. *See* Rule 1-017(A) NMRA (providing that "[e]very action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, . . . or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought"); *Crumpacker v. DeNaples*, 1998-NMCA-169, ¶ 19, 126 N.M. 288, 968 P.2d 799 ("A real party in interest is one who is the owner of the right being enforced and is in a position to discharge the defendant from

---

[2] In arguing that standing is not jurisdictional, Plaintiffs rely on *ACLU*, in which our Supreme Court stated that "standing in our courts is not derived from the state constitution[] and is not jurisdictional[,]" 2008-NMSC-045, ¶ 9, although the Court qualified this in footnoting that standing could "be a jurisdictional matter when a litigant asserts a cause of action created by statute." *Id.* ¶ 9 n.1. The Court then went on to say that "at least as a matter of judicial policy if not of jurisdictional necessity, our courts have generally required that a litigant demonstrate injury in fact, causation, and redressability to invoke the court's authority to decide the merits of a case." *Id.* ¶ 10. We read *ACLU* to say that, except when a litigant asserts a cause of action created by statute, standing's place in our jurisprudence rests on embedded traditional federal standing requirements that our courts have embraced and on the policies and principles on which those requirements are based. *Id.* ¶¶ 10, 13, 20.

the liability being asserted in the suit." (internal quotation marks and citation omitted)).

**{22}** As a real party in interest defense, Defendants can obtain no relief in this appeal. First, Defendants did not seek dismissal in the district court based on grounds that no trustee existed, Los Vigiles was not the real party in interest, and dismissal was appropriate for the failure to join the real party in interest. By their failure to raise the real party in interest issue, Defendants waived the defense. *See Crumpacker*, 1998-NMCA-169, ¶ 41 ("[O]bjections based on real party in interest status can be waived and, thus, are not jurisdictional."); *see also* 6A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice & Procedure* § 1554 (3d ed. 2010) (interpreting Rule 8(c) of the Federal Rules of Civil Procedure and explaining that an objection to a plaintiff's status as the real party in interest can be included in the answer to the complaint, thus treating it as an affirmative defense, and noting that the defense is not jurisdictional and may be freely waived). Moreover, by failing to raise the issue in the district court, Defendants failed to preserve it, and we will not review arguments that were not preserved in the district court. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987) ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court.").

**{23}** Second, every indication is that Los Vigiles succeeded to or acquired and continues to have "a personal stake in the outcome of [the] case[,]" as well as "a traceable . . . connection between the claimed injury and the challenged conduct." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, 121 N.M. 764, 768, 918 P.2d 350, 354 (discussing the requirements of standing). Denials of ingress and egress easement rights to an owner's property, if proved, constitute an injury in fact to the owner traceable to the defendants' conduct. *See N.M. Gamefowl Ass'n*, 2009-NMCA-088, ¶ 30 (setting out *ACLU*'s explanation that "an association has standing to sue on behalf of its members when (1) the members would otherwise have standing to sue, (2) the interests that the association seeks to protect are germane to the association's purpose, and (3) the claim asserted and the relief requested do not require the individual members to participate in the lawsuit"); *Crumpacker*, 1998-NMCA-169, ¶ 41 (recognizing that "standing turns on whether the plaintiff can show an 'injury in fact' traceable to the defendant's conduct," whereas the "real party in interest" concept "entails identification of the person who possesses the particular right sought to be enforced"). Los Vigiles itself, in fact, filled the role of the office of the justice of the peace and has been and is obligated to act in regard to the property for the benefit of the beneficiaries, no different than if it were the office of the justice of the peace. We see no reason why that association cannot hold that position of trust. Whether Los Vigiles's formal entity status has been perfected, whether Los Vigiles's authority to act as successor in fact in a position of trust with respect to the property, and whether Los Vigiles's legal action here was properly authorized by individuals with authority to act on behalf of the entity, are matters we have no need to pursue in this appeal.

**{24}** In sum, we hold that, on the state of the record, Los Vigiles was not barred for lack of subject matter jurisdiction from seeking to establish easements as it has done in this case.

The multiple cases Defendants cite in their effort to establish lack of subject matter jurisdiction are beside the point or not on point, are not consistent with applicable New Mexico controlling precedent, and are unpersuasive, and we see no reason to analyze the cases in this Opinion.

**Point II: Establishment of Easement by Implication and Necessity**

**{25}** Defendants' Point II states that the district court used an improper legal standard to evaluate Los Vigiles's claim of easement by implication and necessity and that if the proper standard had been used, it would be apparent that Los Vigiles failed to meet its burden of proof. We review de novo legal questions arising from a district court's application of law to the facts involving the existence of an easement. *Skeen v. Boyles*, 2009-NMCA-080, ¶ 17, 146 N.M. 627, 213 P.3d 531. Defendants also attack the court's findings of fact. We review challenges to findings to determine whether they are supported by substantial evidence. *Bogle v. Summit Inv. Co.*, 2005-NMCA-024, ¶ 10, 137 N.M. 80, 107 P.3d 520.

**{26}** We do not understand there to be a dispute relating to distinctions, if there are any to be made, in regard to whether the easement Plaintiffs sought was by implication or by necessity, or by both, based on some mixed form of those sources. Accordingly, we refer from here on to the easement in question simply as "easement by necessity."

**{27}** Defendants argue several points on the issue of easement by necessity. They argue that there is no ultimate finding that Plaintiffs were "landlocked," that the court erroneously "overlooked" the requirement in New Mexico law that a landowner be landlocked before an easement by necessity can be declared, and that the court's findings of fact would not support an ultimate finding that Plaintiffs were landlocked. They argue that an alternative means of access existed and that Plaintiffs did not prove that the Sebastian Canyon Road provided exclusive access at time of severance from the single source, namely, the Las Vegas Land Grant. And they argue that a quiet title decree obtained in 1980 by the owner of the Rebar Haygood Ranch, Jerry Hooper, precluded any claim of easement by necessity.

**{28}** This Court's decision in *Hurlocker v. Medina*, 118 N.M. 30, 878 P.2d 348 (Ct. App. 1994), is the latest full-scale pronouncement of the elements for establishing an easement by necessity.

> Easements by necessity arise from an implied grant or reservation of right of ingress and egress to a landlocked parcel. In order to uphold an easement by necessity[,] a court must find a conveyance of a portion of the grantor's land that, after the severance of the two parcels, creates a necessity to pass over one of them to reach any road or public street. An easement by necessity requires:
>
>> (1) unity of title, indicating that the dominant and servient estates were owned as a single unit prior to the separation of

9

such tracts[]; (2) that the dominant estate has been severed from the servient tract, thereby curtailing access of the owner of the dominant estate to and from a public roadway; and (3) that a reasonable necessity existed for such right of way at the time the dominant parcel was severed from the servient tract.

*Id*. at 31-32, 878 P.2d at 349-50 (internal quotation marks and citations omitted). "[U]nity of title under New Mexico law does not require the dominant and servient estates be carved out of a previously undivided parcel." *Id.* at 33, 878 P.2d at 351. "[T]he easement by necessity rests more heavily upon the intent of the parties than a public policy in favor of productive land use." *Id*. at 34, 878 P.2d at 352. The analysis "requires a fact-based inquiry depending on the language of the deed and surrounding circumstances." *Id*.

Necessity for such easement arises from a presumption that, when a grantor conveys property, absent a clear indication to the contrary, the grantor is presumed to have intended to have reserved unto himself, or to have conveyed to his grantees, a means of access to the property in question, so that the land may be beneficially utilized.

*Herrera v. Roman Catholic Church*, 112 N.M. 717, 720, 819 P.2d 264, 267 (Ct. App. 1991). That unity of title stemming from the Las Vegas Land Grant existed in this case is not in dispute. The *Herrera* presumption is applicable. That said, "[g]enerally, the law does not favor claims of easement and the burden is on the party asserting such claim to prove it clearly." *Id.* (omission, internal quotation marks, and citation omitted).

**{29}** The district court's pertinent findings were:

16.     At the time the Las Vegas Land Grant severed from its holdings the portion of property deeded to the Los Vigiles Land Grant in 1951, there was a necessity for the [g]rantor to have reserved right of easement through its former holdings owned by Defendants' predecessors to join the public road at [C]ounty Road A-11A.

17.     At the time of severance from the Las Vegas Land Grant to his predecessor in 1938, the tract of land now owned by Mike Martinez similarly required the reservation of a grant of an easement through properties of . . . Defendants' predecessors to reach a public road, County Road A-11A.

18.     There was a historical necessity for us[e] of the S[e]bastian Canyon Road in favor of both Plaintiffs both now and at the time of severance from the . . . Las Vegas Land Grant.

19.     Honorable Judge Joe Angel also found in 1980 that there was

10

a similar necessity for the same said road affecting the southerly portion of the Hooper property as it then traversed southerly through lands now owned by the Reeves brothers and Wid Slick as County Road A-11A.

. . . .

21. The Sebastian Canyon roadway from County Road A-11A into the southern boundary of the former Hooper tract and continuing to its [terminus] past the Mike Martinez parcel and up to the northeasterly reaches of the Los Vigiles Land Grant is the only ingress and egress available to both Plaintiffs now and at the time of severance from the Las Vegas Land Grant.

22. Neither Plaintiff has any reasonable alternative with respect to accessing their parcel or parts of their parcels of land, now or at the time of severance.

23. The dominant estates owned by . . . Plaintiffs, and the servient estates owned by Defendants originated from a common source in that such properties all constituted a portion of the Las Vegas Land Grant, a Mexican Land Grant confirmed by an Act of the [U.S.] Congress as Private Land Claim [No.] 20, on June 21, 1860.

24. The roadway from County Road A-11A[] north through . . . Defendants' properties, into and through the Mike Martinez property and up to Plaintiff-Los Vigiles Land Grant's northerly most reaches have been defined since time immemorial on the ground with reference to the needed easement and certainly existed at the time of severance.

. . . .

49. There is no viable way for the Los Vigiles Land Grant to connect the northerly area of their property which includes the Canyon del Muerto and the Cerro Colorado to its lower road, Canyon del Agua, without significant expense.

50. At the time Plaintiffs' properties were severed from the Las Vegas Land Grant, there were no alternative routes available to the grantees to reach the property from a public way other than the S[e]bastian Canyon Road.

**{30}** In their brief in chief, Defendants attack the court's failure to apply a legal standard of landlocked status in regard to easements by necessity—an issue we review de novo because it involves a legal question as to the meaning of "landlocked" and a determination of the elements necessary to prove an easement by necessity. *See, e.g.*, *Grant v. Cumiford*,

2005-NMCA-058, ¶ 21, 137 N.M. 485, 112 P.3d 1142 (stating that legal questions are reviewed de novo). But, Defendants also attack findings of fact on the ground that no substantial evidence supported the findings. Defendants assert that "there is no substantial evidence . . . that the Sebastian Canyon Road provided exclusive access at time of severance (1938 (Martinez) 1951 [Los Vigiles]) or at any other material time." Defendants also assert that evidence does not support an ultimate finding or conclusion that Los Vigiles or Martinez were landlocked, an ultimate finding or conclusion that, in Defendants' view, was required "before an easement by necessity may be declared[.]" *See Hurlocker*, 118 N.M. at 31, 878 P.2d at 349 (stating that "[e]asements by necessity arise from an implied grant or reservation of right of ingress and egress to a landlocked parcel"). In their reply brief, Defendants include a new attack based on lack of substantial evidence of "reasonable necessity"; however, in oral argument, Defendants insisted that New Mexico required landlocked status and not merely reasonable necessity.

**{31}** Defendants' attacks, insofar as they pertain to Los Vigiles, are based in substantial part on what Defendants advance as proof of the existence of alternative access to Los Vigiles's property, namely, documentary evidence and testimony that, according to Defendants, "clearly show that the Cañon del Agua road provides access to the 3,000-acre tract." Although, as indicated, Defendants also argue a lack of substantial evidence to support necessity in 1951 at the time of severance, Defendants develop no argument in regard to whether Martinez has reasonable access outside of Sebastian Canyon Road. We therefore treat Plaintiffs' claims as indistinguishable.

**{32}** Under New Mexico case law, we are not to interpret the word "landlocked" so literally and absolutely as to mean that there exists no possibility of gaining access. No New Mexico case requires such a literal, absolute rule. To the contrary, the controlling view is that of "reasonable necessity." *Venegas v. Luby*, 49 N.M. 381, 387, 164 P.2d 584, 587 (1945) ("The basis for an easement by implication must be reasonable necessity . . . the English rule of absolute necessity being in this state modified." (internal quotation marks and citation omitted)); *Hurlocker*, 118 N.M. at 31-32, 878 P.2d at 349-50 (stating that "reasonable necessity" at the time of severance is one element of an easement by necessity); *Herrera*, 112 N.M. at 720, 819 P.2d at 267 (recognizing "reasonable necessity" as an element of an easement by necessity); *see also, e.g.*, *Thompson v. Whinnery*, 895 P.2d 537, 541 (Colo. 1995) (en banc) (stating that the court "must determine whether there is a practical inability to have access any other way than by a way of necessity" (internal quotation marks and citation omitted)); *Hayes v. Tompkins*, 337 S.E.2d 888, 890 (S.C. Ct. App. 1985) (stating that "a grantee claiming an implied easement of necessity . . . need not prove the right-of-way was absolutely necessary [because r]easonable necessity will suffice" (internal quotation marks and citation omitted)). The easement issue before us is to be governed by the concept of reasonable necessity.

**{33}** We have reviewed the transcript of trial testimony and the documentary exhibits relating to the issue of reasonable necessity now, as well as at the time the parcel in question was severed from the Las Vegas Land Grant. We apply the presumption of the intent of the

12

grantor to reserve access through the properties severed from the Las Vegas Land Grant property. On this issue, we will view the district court's findings in a light most favorable to the court's judgment. *Herrera*, 112 N.M. at 721, 819 P.2d at 268.

{34}     The Las Vegas Trustees' 1951 deed preceded the date this action was filed by about fifty-eight years. This time gap may well have presented difficulties in finding persons who knew about alternative access, if any existed, at the time of severance. Nevertheless, sufficient testimony existed as to the status of access to permit a reasonable inference that, at the time of severance, there existed reasonable access only from Sebastian Canyon Road. Our review of the testimony and documentary evidence convinces us that substantial evidence existed to clearly and convincingly support findings that reasonable necessity existed and particularly that Cañon del Agua road was never, during material periods of time, an alternative access that would preclude a finding or conclusion of an easement by necessity using Sebastian Canyon Road. Further, there existed clear and convincing evidence to show that while a part of the Los Vigiles southern acreage may have been reachable off of County Road A-11A, it was not reasonable for access purposes to extend that limited reach into the Los Vigiles's northern acreage called Canyon del Muerto, which is the property at issue.

{35}     Clear and convincing evidence also showed that the northern and southern portions were separated by mountainous, densely forested terrain, a steep canyon, and "a big plateau like an outcrop[,]" which presently precludes and since at least 1951 has precluded reasonable travel other than limited travel on foot or by horseback, and has precluded reasonable retrieval and transportation of wood collected from the northern part of the property (Canyon del Muerto). And there was clear and convincing evidence that the Sebastian Canyon Road had always been the access route to Canyon del Muerto for wood gathering and other uses when the land still belonged to the Las Vegas Land Grant and afterward.

{36}     In *Herrera*, we affirmed an easement where the easement was the "only reasonable route for vehicular traffic[,]" upholding the easement over testimony that another dirt road existed but had been closed for many years, and where land on the other side was "swampy and inaccessible by vehicular traffic." 112 N.M. at 719, 819 P.2d at 266. In *Wagner v. Fairlamb*, cited in *Herrera*, 112 N.M. at 720, 819 P.2d at 267, the Colorado Supreme Court found an easement by necessity even though there was contradictory evidence as to whether the plaintiff could have constructed an alternate road. *Wagner*, 379 P.2d 165, 168 (Colo. 1963) (en banc). According to the *Wagner* court, the steep and mountainous terrain of the plaintiff's land made roads "hazardous, expensive[,] and dangerous to build[,]" thereby rendering the easement road the "only practical method of affording ingress and egress[.]" *Id.* To hold otherwise, the court explained would "mean[] a practical inability to have access any other way than by a way of necessity." *Id.*; *see also Thompson*, 895 P.2d at 541 ("When a tract of property is divided by a natural obstacle . . . the property owner may require separate points of access to the parcels on either side of the natural obstacle in order to obtain access to the entire tract and put it to its intended use.").

13

**{37}** Based on the testimony and the documentary evidence presented by Plaintiffs, we are persuaded that the district court was in the best position to evaluate the credibility of the witnesses and the evidence in reaching findings of fact. *See Skeen*, 2009-NMCA-080, ¶ 37 (indicating that we may defer to the district court's "determinations of ultimate fact [where] we lack opportunity to observe demeanor, and we cannot weigh the credibility of live witnesses"). To the extent that Defendants assert that the district court erred in its application of law and view of the facts to support an easement by necessity, we disagree. We also disagree with Defendants' assertion that the district court's findings of fact as to reasonable necessity are unsupported by substantial, clear, and convincing evidence.

**{38}** Defendants nevertheless argue that the quiet title decree obtained in 1980 by Hooper as to his Rebar Haygood Ranch property cut off any claim of easement by necessity prior to 1980 based on circumstances before entry of the decree. In that quiet title action, *Hooper v. Aragon*, No. D-412-CV-1980-00034, San Miguel County, adjoining the Rebar Haygood Ranch property to the south was property of persons named Lassard, and adjoining the Lassard property to the south was the property of persons named Reeves. The Sebastian Canyon Road ran northerly through the Reeves and Lassard properties to the Rebar Haygood Ranch property. In Hooper's quiet title action, although no particular title dispute appeared to exist, and it appeared that the primary purpose of the action was that of access, Hooper received not only a quiet title decree with respect to his Rebar Haygood Ranch property, but also an ingress and egress easement along Sebastian Canyon Road from his boundary with Lassard south through the Lassard and Reeves properties.

**{39}** In the action, Hooper's pertinent requested findings of fact and conclusions of law in regard to access stated:

> 12. The real estate owned by [Hooper] and that owned by Reeves and Lassards originated from a common source in that such properties all constituted a portion of the Las Vegas Grant, a Mexican Land Grant confirmed by Act of the U.S. Congress as Private Land Claim No. 20, June 21, 1860.

> 13. Access for ingress and egress to [Hooper's] property has from time immemorial been by means of a road (roadway) which begins at a county road at the community known as Montezuma thence proceeds northerly along what is commonly known as Sebastian Canyon and along a presently established and continuous roadway across the real estate of Lassards and real estate of Reeves to the south boundary of [Hooper's] property.

> . . . .

> 15. The roadway from the county road to the south boundary of [Hooper's] lands along Sebastian Canyon has been defined for many years by gates located on the boundary lines.

14

. . . .

20. Access for ingress and egress to . . . Reeves['] property has from time immemorial been by means of the roadway which begins at a county road at the community known as Montezuma thence proceeding northerly along Sebastian Canyon and along a presently established and continuous roadway across the real estate of . . . Lassard to the south boundary of . . . Reeves' property.

. . . .

D. The real estate owned by . . . Reeves and Lassards, as servient estates, are subject to an easement for ingress and egress to [Hooper's] property as dominant estate, with full, complete[,] and unrestricted rights thereunto appurtenant.

E. The real estate owned by . . . Lassards as servient estate is subject to an easement for ingress and egress to . . . Reeves' property as dominant estate, with full, complete[,] and unrestricted rights thereto appurtenant.

F. [Hooper's] predecessors in title had and [Hooper] now own[s] an easement for ingress and egress by grant from the Las Vegas Land Grant by implication.

Findings of fact and conclusions of law of the district court in regard to the easement were verbatim repetitions of Hooper's foregoing requested findings of fact and conclusions of law. Reeves resisted Hooper's claim of easement on several grounds, including that "[t]here [was] no right-of-way of necessity across the land of [Reeves] to the lands of [Hooper]."

**{40}** Hooper's requested findings of fact and conclusions of law and the findings and conclusions of the district court in that action are pertinent to the case before us. First, by the court's decision in the Hooper quiet title action, it was established that the properties of Hooper, Lassard, and Reeves, through all of which the Sebastian Canyon Road or an extension of it ran as the road proceeded south from the Rebar Haygood Ranch southern boundary, emanated from a common source, namely, the Las Vegas Land Grant. Second, it was established that Sebastian Canyon Road provided ingress and egress "from time immemorial" at least up to the Rebar Haygood Ranch property. Third, Hooper was granted an ingress and egress easement along and over Sebastian Canyon Road over the Lassard and Reeves properties. And fourth, the easement was "by grant from the Las Vegas Land Grant by implication."

**{41}** Defendants argue that by reason of the 1980 quiet title decree "no necessity existed at [the] time of trial, [and] the trial court erred in concluding that Plaintiffs have an easement by necessity[,]" appearing to rely in part on language in *Sitterly v. Matthews*, 2000-NMCA-

15

037, ¶ 30, 129 N.M. 134, 2 P.3d 871, that "[a]n easement of necessity lasts only as long as the necessity continues." (Internal quotation marks and citation omitted.) Further, they rely on several other arguments that they advance elsewhere in their brief relating to any easement by necessity and any prescriptive easement, namely, that Plaintiffs were properly and effectively served, by substituted, constructive service, the court-quieted title to the Rebar Haygood Ranch property, and Plaintiffs were bound by that decree and precluded from asserting any easement right or interest. We reject Defendants' arguments.

{42}    Even though the easement determinations in the Hooper quiet title action related to ingress and egress south of the Rebar Haygood Ranch property, Hooper's requested findings and conclusions and the court's findings and conclusions indicate that what Hooper sought and what the court determined constituted acknowledgment of common grantor intent, at the time of severance, that ingress and egress be provided to its various grantees along Sebastian Canyon Road. Thus, it is reasonable to view the district court's common source analysis in the Hooper quiet title action to be similarly applicable in Los Vigiles's and Martinez's favor as to ingress and egress from Hooper's Rebar Haygood Ranch south boundary to the Martinez property and ultimately to the Los Vigiles property. Defendants bypass this aspect of the quiet title action when presenting various arguments as to why the quiet title decree precludes Plaintiffs' easement by necessity claims.

{43}    Hooper did not seek and obtain a declaration in the 1980 quiet title action as to the existence or not of an easement by necessity through property, the title to which was being quieted. Nor did Hooper at least allege that Los Vigiles or its residents or inhabitants or Martinez might claim such an interest. We therefore are not persuaded that Los Vigiles and those named in the Las Vegas Trustees' 1951 deed effectively or lawfully received constructive service of process in the Hooper quiet title action. Hooper was on notice of the recorded Las Vegas Trustees' 1951 deed and the common source grantor's presumed intent that ingress and egress exist with respect to severed properties and survive severance of various parcels. Were Hooper to have thought in 1980 that Los Vigiles was claiming an easement by necessity and, were Hooper to have wanted at the time to defeat such a claimed right or interest through the quiet title action, surely, at the very least, he would have described as much in the alternative method of service, as well as in his complaint. And he likely could have made diligent inquiry and have attempted to obtain personal service of process.

{44}    Moreover, under the circumstances, Los Vigiles and those mentioned in the Las Vegas Trustees' 1951 deed (residents and inhabitants) should not reasonably be charged with constructive service of process as to an action specifically seeking an easement by implication or necessity solely with respect to that portion of the road that did not run across Rebar Haygood Ranch. And the quiet title decree cannot reasonably be construed to preclude Plaintiffs' easement by necessity claims. Defendants' authorities do not require any different conclusion. We therefore disagree with Defendants that Plaintiffs were bound as unknown claimants served by constructive service and then later, after the Hooper quiet title decree, were precluded from asserting their easement by necessity claims.

16

**{45}** In sum, we hold that the district court applied the proper legal standard relating to claims of easement by necessity and that the district court's findings of fact in regard to an easement by necessity are supported by substantial evidence. Based on the presumption that arises in common source circumstances such as those in this case, and based on the language in the Las Vegas Trustees' 1951 deed and on the express intent and purposes found in that deed, we hold that Plaintiffs were granted ingress and egress easements by implication and necessity, pursuant to and in conformity with the Las Vegas Trustees' 1951 deed and grant by the Las Vegas Land Grant.

**Point III: Damages**

**{46}** Defendants' Point III states that the damage awards were miscalculated and unsupported. The district court awarded $50,000 to Los Vigiles for downed wood that had been cut by a contractor on behalf of members of Los Vigiles as a part of a state-financed "thinning program." The district court's findings in regard to the $50,000 award relevant to Defendants' argument are the following:

> 58.    Although the contractor was able to [fell] approximately 490 cords of wood on the property to be used as 50% firewood, 40% vigas and 10% saw logs, these wood products have now rotted and are totally worthless.
>
> . . . .
>
> 60.    The Los Vigiles . . . members have been prevented by . . . Defendants, each and all of them, from being able to retrieve approximately 490 cords of wood with an estimated value of $50,000.
>
> 61.    The current price for a cord of wood is currently $100 and saw logs and vigas are priced higher.
>
> 62.    . . . Los Vigiles . . . has been minimally damaged in the amount of $50,000 stemming from the spoliation and ruination of their timber, the concomitant bark beetle problem that now exists on the ground and in the area and by the inability to even gather and pile the dead and downed wood to improve the watershed and to assist in fire control.

**{47}** In its findings and conclusions, the court also awarded Los Vigiles $5,000 for "not being able to use the northern part of their land grant for more aesthetic purposes" and awarded $2,500 to Martinez for loss of use of the road.[3]

---

[3] Defendants point out that the $5,000 and $2,500 awards are not expressly and independently contained in the district court's judgment. Instead, the findings of fact and

**{48}** Defendants argue that the $50,000 award was miscalculated because the court awarded gross value, not net value that considered the "costs associated with taking the timber to market and preparing it for sale, such as by splitting it, trucking it, and stacking it." Defendants fail to point out where in the district court they specifically made this net value argument. We, therefore, do not address this argument. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue.").

**{49}** Defendants argue further that the $5,000 and $2,500 awards are also unsupported in that no testimony was presented of the fair market or retail value of the loss of use. Again, Defendants fail to show where this was specifically argued in the district court, and we, therefore, do not address this unpreserved argument. *Id.*

**CONCLUSION**

**{50}** We affirm the district court's judgment granting Plaintiffs an ingress and egress easement by implication and necessity pursuant to and in conformity with the Las Vegas Trustees' 1951 deed and grant by the Las Vegas Land Grant. We affirm the district court's damages awards. We reverse the district court's judgment granting an easement by prescription.

**{51} IT IS SO ORDERED.**

                                        _____

                                        **JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Chief Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**

---

conclusions of law as to those awards are adopted and incorporated by reference. This is an improper practice that should be avoided. *See* Rule 1-054(A) NMRA ("A judgment shall not contain a recital of . . . the record of prior proceedings."). This occurrence has "an air" of the court also adopting verbatim Plaintiffs' proposed form of judgment and not making an independent examination of its correct form and content. The judgment should explicitly set out damages awards.

**Topic Index for *Los Vigiles Land Grant v. Rebar Haygood Ranch, L.L.C.*,No. 31,325**

**APPEAL AND ERROR**
Preservation of Issues for Appeal
Standard of Review

**CIVIL PROCEDURE**
Findings and Conclusions
Real Party in Interest
Standing

**JUDGES**
Abuse of Discretion

**JURISDICTION**
Subject Matter

**PROPERTY**
Easement
Land Grants
Quiet Title
Right of Way

**REMEDIES**
Compensatory Damages