# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:        November 14, 2016

**NO. 32,241**

**ROBERT CIOLLI and
MARY LOU CIOLLI,**

   Plaintiffs-Appellees,

v.

**McFARLAND LAND &
CATTLE COMPANY, INC.,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**Gary Clingman, District Judge, by designation**

Cuddy & McCarthy, LLP
Jacquelyn Archuleta-Staehlin
Charlotte H. Hetherington
Santa Fe, NM

for Appellees

Schutte Law Office, LLC
Donald C. Schutte
Tucumcari, NM

for Appellant

**OPINION**

**KENNEDY, Judge.**

{1}    Plaintiffs, owners of a landlocked ranch in Quay County, sued an adjacent ranch to compel the recognition of an easement across that ranch to the public highway. The district court entered a judgment recognizing an implied easement by necessity for the benefit of Plaintiffs' ranch. Defendant appealed. We affirm the district court.

## I.    BACKGROUND

### A.    Introduction

{2}    The dispute in this case is over whether the Ciolli Ranch, owned by Plaintiffs, Robert and Mary Lou Ciolli (the Ciollis), is entitled to an easement across the McFarland Ranch, owned by Defendant McFarland Land & Cattle Co., Inc. (McFarland Land). The district court initially concluded that the Ciollis were entitled to an easement. For reasons best left to our previous order in this case, we reversed and remanded for further clarification by the district court as to how the history of the two ranches might come to support recognizing a type of easement that is cognizable under our law.

{3}    Following remand and a hearing on competing summary judgment motions, the district court (with a different judge) set out what it considered were undisputed

findings of fact and conclusions of law followed by an order granting the Ciollis' motion for summary judgment, recognizing the existence of an implied easement by necessity across the McFarland Ranch being appurtenant to and for the benefit of the Ciolli Ranch as the dominant estate. McFarland Land appealed this judgment. We ordered the parties to brief the issues as reflected in the latest judgment entered by the district court for our consideration on the merits.

**B.    Facts**

{4}    The facts are undisputed by the parties. Prior to 1970, Benton Hodges owned both what are now referred to in this case as the McFarland Ranch and the Ciolli Ranch as portions of one parcel of land. Before the two ranches were severed and sold, the larger parcel of land abutted a public road—QR 46—on its southern end. In 1970 Hodges sold what is now the McFarland Ranch to Shine McFarland and retained the remaining parcel of land, including the portion now known as the Ciolli Ranch. The new McFarland Ranch (and now owned by McFarland Land) still abutted QR 46 on its southern end.

{5}    The 1970 warranty deed from Hodges to Shine McFarland and his wife did not reserve an easement across the McFarland Ranch to the county road. After 1970, Hodges accessed what is now the Ciolli Ranch through its northeast corner from State Highway 278, entering his property by crossing the property of other landowners.

This route is known as the "Latham Route." Shine McFarland thereafter leased Hodges' property for a period of time, grazing his (and apparently Hodges') cows on what is now the Ciolli Ranch. Shine McFarland accessed Hodges' ranch using the Latham Route from State Highway 278 through the northeast corner of Hodges' property. After tending to his cattle, Shine McFarland would then pass south through the present Ciolli Ranch onto and across the McFarland Ranch at its eastern border, exiting to QR 46 via what has since become known as the "feed road" on the McFarland Ranch. The use of State Highway 278 to access what is now the Ciolli Ranch via the Latham Route by Hodges, Shine McFarland, or both, continued from the early 1960s through the late 1970s. McFarland Land acknowledges that the Latham Route is now impassable.[1] The district court found that at some time prior to 1997, permission to use the Latham Route was withdrawn by other persons than the parties to this suit and that the route was "gated, locked and closed as a means to access the Ciolli Ranch."

{6} In 1980 Shine McFarland filed a quiet title suit encompassing the parcel of the McFarland Ranch where the feed road is located. The court quieted title to the McFarland Ranch in favor of Shine McFarland and against all named and unknown

---

[1] We observe mention made of another route, now blocked, to the Hodges' property through the property of another land owner identified in the record as "Beck" who is not a party to this case.

3

claimants, including Hodges' heirs. While the judgment quieted title in R.M. McFarland and Elsie S. McFarland, barring and estopping all named and unknown claimants, including James Ray Hodges and Nancy Hodges as named defendants from having or claiming any "right, title or interest in or lien upon" the McFarland Ranch, the suit did not specifically concern any possible easements or other rights of access from the Hodges' property south through the McFarland Ranch to QR 46.

{7}     In 1993, what is now the Ciolli Ranch, was purchased from heirs of the Hodges. Since 1997 access for the Ciollis to their ranch has been solely by the feed road, by permission of McFarland Land, who had no legal obligation to provide it, though permission to use the road has never been withdrawn by McFarland Land. In 1997 the ranch was sold to the Ciollis. A map given to the Ciollis by their seller directed them to use the feed road across the McFarland Ranch for access. Without an easement, the Ciollis have no legally enforceable access to their ranch.

{8}     The Ciollis requested a written easement for the feed road from Shine McFarland in 2003, because the Ciollis were selling their property and could not do so without a written easement of record. McFarland Land refused and told the Ciollis that it would not give a "written easement" and that "everybody uses everybody else's property." The district court found that "[w]ithout a legally enforceable right of access, the Ciolli Ranch is unusable and unsaleable."

4

## C. Trial, Reversal, and Remand

{9} In 2011 the Ciollis filed this action seeking a prescriptive easement or, in the alternative, a "private implied easement" across the McFarland Ranch. Following a trial on the merits, the district court found clear and convincing evidence that the Ciollis' permissive right to cross the McFarland Ranch has never been in dispute. The district court's conclusions stated that the word of McFarland Land was more binding than any written contract, but also concluded that, "in today's world[,] a written easement is required."[2] The district court concluded that the use of the road "is a reasonable, limited easement based upon historical needs and usage as testified to by both [the Ciollis'] witnesses and [McFarland Land's] witnesses."

{10} Without relating the meaning of "reasonable, limited easement" to the types of easements the Ciollis sought in their complaint, the district court stated that the use of the road is an appurtenant easement crossing one section of the McFarland Ranch.

---

[2] McFarland Land stood on the quality of its word that permission for the Ciolli Ranch would not be revoked by them. Even assuming their good will, the duration of such a promise cannot be infinite, nor is it irrevocable. The lack of irrevocability for such a promise—particularly to enable its enforcement by the Ciollis or their successors as to McFarland Land or its successors with regard to the feed road—would require a recorded easement. As the district court noted in the first proceedings, times are changing, as proven by the fact that without the irrevocability of an easement granting access for the Ciolli Ranch to the sole available public road, the Ciolli Ranch was not able to be sold. This, plus the fulfillment of the legal elements for an easement by necessity, combine to provide the weight of inevitability to our ruling today.

5

Having found that an easement existed, the district court ordered an easement to be drafted and filed as part of its judgment. McFarland Land appealed the judgment to this Court. Because we believed that neither the findings by the district court nor its judgment were sufficient to establish an easement under law, we reversed the judgment and remanded for further proceedings to clarify the status of the parties and their properties.

**1.     Proceedings on Remand**

{11}     On remand, the parties filed competing motions for summary judgment, in which the Ciollis requested the recognition of an easement by necessity and to which McFarland Land responded. The parties filed requested findings of fact and conclusions of law. The district court entered findings of fact and conclusions of law but recognizing that the Ciolli Ranch is landlocked as a result of Hodges' partition of his land and that these circumstances required "[a]n easement of necessity [that] exists from the nearest public roadway (QR 46) across the McFarland Ranch via the [f]eed [r]oad to the Ciolli Ranch." The district court declared such an easement to exist for the benefit of, and appurtenant to, the Ciolli Ranch as the dominant estate ruling that "[t]he McFarland Ranch, the servient estate, is burdened by said easement."

## II. DISCUSSION

{12} "Few things are as certain as death, taxes and the legal entanglement that follows a sale of landlocked real estate." *Bob Daniels & Sons v. Weaver*, 681 P.2d 1010, 1013 (Idaho Ct. App. 1984). The record below demonstrates that substantial evidence exists to support the undisputed facts found by the district court on remand and that they constitute clear and convincing evidence that an easement by necessity is proper. "If the facts are undisputed and only a legal interpretation of the facts remains, summary judgment is the appropriate remedy." *Bd. of Cty. Comm'rs v. Risk Mgmt. Div.*, 1995-NMSC-046, ¶ 4, 120 N.M. 178, 899 P.2d 1132. We apply a de novo standard of review to the legal conclusions. *Wood v. Cunningham*, 2006-NMCA-139, 140 N.M. 699, 147 P.3d 1132.

{13} McFarland Land argues that the district court erred in granting an easement, arguing that the facts do not support the creation of dominant and servient estates from Hodges' division of his ranch, nor elements of an implied easement by necessity that benefits the Ciolli Ranch as the dominant estate. McFarland Land also claims that any easement by necessity is precluded by the 1980 quiet title suit that "quieted title" to the McFarland Ranch against the Ciollis' predecessors in title.

{14} We first consider whether the elements of an implied easement by necessity have been met. We then turn to whether the 1980 quiet title suit precludes the district court's finding an easement by necessity.

**A.    Easement by Necessity: Three Elements and a Presumption**

{15} Easements by necessity are implied by law because conveyance of land carries with it a presumption that neither of the resulting parcels severed by a conveyance will be deprived of certain implied rights, including an implied right of access. "[W]hen a grantor conveys property, absent a clear indication to the contrary, a court is allowed to presume that the conveyance was done with the intention to reserve to himself, or convey to his grantees a way to access the property so it can be beneficially utilized. *Herrera v. Roman Catholic Church*, 1991-NMCA-089, ¶ 10, 112 N.M. 717, 819 P.2d 264. Restatement (Third) of Property: Servitudes § 2.15 (2000), explains the application of this rule: "A conveyance that would otherwise deprive the land conveyed to the grantee, or land retained by the grantor, of rights necessary to reasonable enjoyment of the land implies the creation of a servitude granting or reserving such rights, unless the language or circumstances of the conveyance clearly indicate that the parties intended to deprive the property of those rights."

{16} To establish an easement by necessity, three elements must be met:

> (1) unity of title, indicating that the dominant and servient [parcels] were owned as a single [parcel] prior to the separation . . . ; (2) that the dominant [parcel had] been severed from the servient [parcel], thereby curtailing access of the owner of the dominant [parcel] to and from a public roadway; and (3) that a reasonable necessity existed . . . at the time the dominant parcel was severed from the servient [parcel].

*Id.* (internal quotation marks and citation omitted). As noted below, an easement by necessity generally lasts as long as the necessity that created it. *See Sitterly v. Matthews*, 2000-NMCA-037, ¶ 30, 129 N.M. 134, 2 P.3d 871.

{17} We must examine the facts in light of the elements required to establish an easement by necessity.

**1. Unity of Title**

{18} Hodges owned the single piece of land from which the Ciolli Ranch and McFarland Ranch were created at different times. Servitudes by necessity arise on severance of rights held in a unity of ownership; the requirement is fulfilled, as here, "when a grantor divides a single parcel into two or more parcels, and it can take place when a grantor conveys less than full ownership in a single parcel." *Hurlocker v. Medina*, 1994-NMCA-082, ¶ 11, 118 N.M. 30, 878 P.2d 348 (internal quotation marks and citation omitted). The element of unity of title between the ranches is undisputed in this case and supports an easement by necessity.

## 2. Legal Access Was Curtailed by the Severance

{19} Selling the McFarland Ranch to Shine McFarland created a landlocked property owned by Hodges that had no legal access to a public road. An easement by necessity "can only arise where an owner of property severs a portion of his property and the portion retained or sold is cut off from access to a public route by the land from which it was severed." *Amoco Prod. Co. v. Sims*, 1981-NMSC-115, ¶ 13, 97 N.M. 324, 639 P.2d 1178; *Hurlocker*, 1994-NMCA-082, ¶ 5 (citing *Herrera*, 1991-NMCA-089, ¶ 10); s*ee Brooks v. Tanner*, 1984-NMSC-048, ¶ 25, 101 N.M. 203, 680 P.2d 343; *Los Vigiles Land Grant v. Rebar Haygood Ranch, LLC*, 2014-NMCA-017, ¶ 28, 317 P.3d 842. The basis for the easement must exist at the time of the initial severance. *Herrera*, 1991-NMCA-089, ¶ 14. No legal access to a public road existed from the Hodges' parcel of the severed property. The evidence cited by McFarland Land shows that Shine McFarland entered the Hodges' property via the Latham Route to tend to cattle on that ranch and then used the feed road to access QR 46 through his ranch prior to 1993 when the current Ciolli Ranch was first sold. There is no doubt that Shine McFarland was actually aware both of the Latham Route and that the only direct access to QR 46 from the Hodges' property was through the McFarland Ranch prior to the creation of what is now the Ciolli Ranch. Because Hodges had reserved no rights to access QR 46 at the time of the McFarland sale, we

10

conclude that the element of curtailment from access to a public road was properly established.

**3.      Reasonable Necessity for Access to QR 46 Was Established**

{20}      An easement by necessity arises when, "prior to the conveyance, the property did enjoy such rights [of access] and that, absent the implied servitude, the conveyance would deprive it of such rights." Restatement, *supra*, § 2.15 cmt. c. Hodges owned the complete tract of property from which the McFarland Ranch parcel was then severed. At all times material to Hodges' ownership of the complete tract, QR 46 was its only legally enforceable access to a public highway. These facts satisfy the requirement that a reasonable necessity for the road existed at the time the dominant parcel was severed from the servient parcel. *See Los Vigiles Land Grant*, 2014-NMCA-017, ¶ 28. This is so because there must only be a *reasonable* necessity for the use of the servitude at the time of the severance. *See id.* ¶ 32. Accordingly, "necessity" connotes an understanding that, while more than mere convenience is involved, there can be no other reasonable way of enjoying the dominant tenement without the easement. *Venegas v. Luby*, 1945-NMSC-045, ¶ 17, 49 N.M. 381, 164 P.2d 584. The facts establish that the necessity for the easement existed at the time of severance. It existed from the time Shine McFarland bought the property from Hodges.

{21} McFarland Land incorrectly argues that because other permissive uses existed at the time of severance, necessity for an easement was defeated. It is undisputed that the only public road Hodges' original property abutted was QR 46 and that other access to the property resulted from permissive transit over others' land. Under *Herrera*, revocable permission to cross other land is "irrelevant" and is "no barrier to the finding of an easement by necessity that the benefitted parcel is accessible under." 1991-NMCA-089, ¶ 14. Here, as in *Herrera*, alternative means of access over others' property had been revoked.

{22} McFarland Land also asserts that there "was no evidence that [the Ciollis'] predecessor had even used the feed road or that it was even in existence at the time of the conveyance to [McFarland Land's] predecessor in interest." That is an incorrect view of the law. Hodges curtailed direct access to the only adjacent public road to his property (including the as yet unsevered Ciolli Ranch) when he sold the McFarland Ranch to Shine McFarland. It is the right of access to the public road that is a necessity, not where the access might be located or its prior use or disuse. *See id.* ¶ 16 ("[T]he easement need not be put to continuous use but may lie dormant through successive grantees so as to be available to a subsequent grantee.").

{23} The parties have no dispute that QR 46 is the only public road by which the

12

original Hodges property can be directly accessed. Regardless of how necessary the feed road is today for the Ciollis, the reasonable-necessity requirement is met because access to QR 46 was reasonably necessary for Hodges, such that Hodges is presumed to have intended to reserve an easement in the sale to Shine McFarland. *Id.* ¶ 10 ("An easement by necessity arises from an implied grant or reservation of a right of ingress and egress to a landlocked parcel.").

{24}    Therefore, we hold the requirement satisfied that "a reasonable necessity existed for such right of way at the time the dominant parcel was severed from the servient [parcel]." *Los Vigiles Land Grant*, 2014-NMCA-017, ¶ 28 (internal quotation marks and citation omitted); *Hurlocker*, 1994-NMCA-082, ¶ 11. The district court's finding the existence of an easement by necessity is supported by substantial evidence. We agree that, based on the creation of the easement by implication from Hodges' severance of the McFarland Ranch property from his own, the easement is appurtenant to the dominant estate, the property now known as the Ciolli Ranch, and the McFarland Ranch is the servient estate. Because the easement is a right that is tied to ownership of the Ciolli Ranch property, for which it is necessary, it is an appurtenant easement. Restatement, *supra*, § 1.5(1).

**B.     Preclusive Effect of the 1980 Quiet Title Suit on an Easement by Necessity**

{25}     Next, we address McFarland Land's assertion that any easement to which the McFarland Ranch was subjected by means of the conveyance by Hodges was extinguished by the quiet title action of 1980.

{26}     The district court held that a quiet title suit on behalf of a servient estate could not extinguish an easement by necessity when it runs with the land and is appurtenant to the dominant estate. Alternatively, the district court held that, because of the necessity for access to the Ciolli Ranch, the easement was immediately revived or could not be terminated because the necessity for the easement existed, and easements can only terminate when the necessity for them also terminates.

{27}     The implied intent of the grantor to create an easement by necessity depends on the existence of the necessity for the easement at the time of the original conveyance creating the landlocked property, which at the time of severance creates dominant and servient estates. *Herrera* points out that the easement—the right to use the servient estate—would exist from the time of its creation irrespective of whether it was used. 1991-NMCA-089, ¶ 16. Also, as we noted in *Herrera*, an easement by necessity does not require exercise of the right conferred to remain valid. *See id.* ¶ 10.

{28}     We have previously indicated that a quiet title action to a servient estate is not capable of extinguishing an implied easement by necessity belonging to a dominant

14

estate absent its specific inclusion for adjudication and a specific ruling addressing adjudication in the quiet title suit. In *Los Vigiles Land Grant*, we commented on incongruity of the owner of the Rebar Haygood Ranch's specifically quieting title to an ingress/egress easement by necessity as to servient estates to the south of his property without addressing that properties to the north had similar easements over his land. 2014-NMCA-017, ¶¶ 42-43. Ultimately, we held that the quiet title action could not "reasonably be construed to preclude [the northern neighbors'] easement by necessity claims" where the owner had not specifically included the easement to which his land was servient in the complaint for quiet title. *Id.* ¶ 44. The evidence in this case demonstrates that the necessity for access of the Hodges' property to its only adjacent public road was known to Shine McFarland, who himself used the permissive access to get into the Hodges' property and the feed road to get to QR 46.

{29}     We cannot find in the record before us, and it is not argued, that the quiet title suit in 1980 in any way specifically concerned itself with the use of the road now claimed to be an easement because, when Shine McFarland filed the quiet title action, the use of the feed road by Hodges apparently was not, and could not have been in question, since the Latham Route was still available. The existence of the easement by necessity was dormant. Additionally, though the quiet title suit might have established the boundaries of the McFarland properties against all possible claimants,

15

it did not seek to eliminate all uses to which the property was servient. Moreover, most of the ways by which easements by necessity might be extinguished—merger of the dominant or servient estate, abandonment, or relinquishment—are not issues here. Nor is the cessation of the underlying purpose for the easement, *see Sitterly*, 2000-NMCA-037, ¶ 23, since the initial necessity to connect with QR 46 still exists.

{30}     We affirm the district court. The Ciollis' rights under the easement by necessity were not extinguished or otherwise affected by the quiet title suit.

## III.     CONCLUSION

{31}     We conclude that, based on the evidence presented during the summary judgment proceedings and the district court's findings of fact, the district court was correct in its judgment that the Ciolli Ranch is entitled to an implied easement by necessity as to the feed road across the McFarland Ranch, along the northeast border of the McFarland Ranch, terminating at QR 46. The easement by necessity is not precluded by the 1980 quiet title action because the easement by necessity was a property right appurtenant to the dominant estate that burdened the servient estate and could not be extinguished.

{32}     We affirm the judgment of the district court and remand for further proceedings as may be needed to effect the judgment of the district court.

16

{33}    **IT IS SO ORDERED.**


_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**TIMOTHY L. GARCIA, Judge**